Nita LOONEY, Appellant,

v.

FARMERS INSURANCE GROUP,
Appellee.

No. 53346.

Supreme Court of Oklahoma.

July 15, 1980.

Rehearing Denied Sept. 15, 1980.

Laird & Laird by Jeff R. Laird, Jr., Oklahoma City, for appellant.

Roger L. Heath, Culp, Heath & Sushnik, Oklahoma City, for appellee.

HARGRAVE, Justice.

On June 19, 1977, the appellant, Nita Looney, sustained personal injury as the result of an automobile accident. The automobile in which the appellant was a passenger and her husband, James Looney, was the driver, collided with an automobile driven by Robert Berry. The Looneys' automobile had been purchased by Mr. Looney prior to his marriage with the appellant, and at the time of the accident it was insured by Farmers Insurance Co., Inc. (Farmers), a Kansas corporation. On August 17, 1977, the appellant filed suit against Robert Berry and her husband seeking·$1,000,000.00 in damages.

The defendant Looney, on August 19, 1977, notified Farmers and requested that it defend him in the pending lawsuit, attempt to settle within the policy limits,[1] or stand the excess of any judgment rendered against him. Farmers, the appellee herein, denied coverage because of certain exclusion provisions[2] in the insurance policy and refused to defend.

On October 27, 1977, an evidentiary hearing was held in the District Court of Oklahoma County at which the appellant sought to obtain a default judgment against her husband. The decision on the default judgment was stayed until December 30, 1977, during which time the appellant was instructed to notify Farmers of the continued hearing.

Although notified, Farmers again did not appear on December 30, 1977, and the trial court granted the default judgment against the defendant Looney in the amount of $400,000.00. On January 18, 1978, the appellant filed a garnishment action against Farmers in District Court seeking to recover the full amount of the judgment granted in her favor. Farmers responded by denying that it owed any money to the appellant.

After reviewing the stipulations entered into by the parties and their respective briefs, the trial court, on January 30, 1979, ruled that due to the validity of the named insured and household member exclusions in the insurance policy issued to the defendant Looney by the appellee Farmers, judgment should be rendered for the appellee relieving it of any indebtedness or liability.

The appellant has applied to this Court seeking a reversal of the trial court based on the following major contentions: (1) the exclusions in the insurance policy violate 47 O.S. (1971) § 7–324(e) and 47 O.S. (Supp.

1. The insurance policy provided liability coverage in the amount of $10,000.00 per person and $20,000.00 per accident.

2. The policy issued to the defendant Looney contained the following provisions:
 Definition of Named Insured. If the insured named in Item 1 of the Declarations is an individual, the term named insured includes his spouse, if a resident of the same household.
 This policy does not apply to (12) the liability of any insured for bodily injury to (a) any member of the same household of such insured except a servant, or (b) the named insured.

1978) § 7–601; (2) the exclusions in the insurance policy deny married women equal protection under the law; (3) the conformation clause in the insurance policy amends the policy terms and thereby voids the exclusions; (4) the appellant did not freely enter into a private contract wherein she was a named insured; and (5) the appellee acted in bad faith in refusing to defend and therefore is liable for the full amount of the judgment rendered against its insured.

Appellee filed, without prior approval, a brief in response to appellant's reply brief. Our Rules of Appellate Procedure do not provide for such a document and appellant has asked that same be stricken, and accordingly that document has not been considered in the determination of this cause.

Farmers denied coverage to the defendant Looney on the grounds that the insurance policy in question provides in part that there is no liability of any insured for bodily injury to (a) any member of the same household of such insured, or (b) the named insured. The policy provides further that the term "named insured" includes in its definition the spouse, if the spouse is a resident of the same household. The appellate, who qualifies by definition as both a named insured and household member, contends that these exclusions violate 47 O.S. (1971) § 7–324(e) and 47 O.S. (Supp. 1978) § 7–601.

In order to determine if a violation has indeed occurred, it is necessary to examine both the development of the statutes and the legislative intent they embody. Title 47, Section 7–324(e) can be traced to the Safety Responsibility Act, 47 O.S. (1951) § 521(e), which expressly permitted passenger–guest or family member exclusion from a policy of liability. Section 521(e) stated in part that

> [s]uch motor vehicle liability policy need not insure . . . any liability on account of bodily injury to or death of a guest passenger or member of the family of the insured residing in the same household.

In 1961 subsection (e) was amended although the other subsections of 521 were left intact. The 1961 revision deleted the guest passenger and family member language. This revision has been recodified and is found as part of the Financial Responsibility Act at 47 O.S. (1971) § 7–324(e). By comparing both versions of the statute, it can be concluded that "the legislature only intended to exclude that group of *persons* set forth in [Section] 7–324(e). To place any other interpretation upon [Section] 7–324 would be to read a group of persons (passengers) into that category which can be excluded." *Hibdon v. Casualty Corp. of America, Inc.*, 504 P.2d 878, 882 *(Okl.App.1972)*. The Court of Appeals states further that "when expressing that a group or groups of persons can be excluded in a policy [as so expressed in Section 7–324(e)], by such expression the legislature intended to prevent the insurer from excluding other groups." *Id.*

Although the factual situation in *Hibdon* differs from the present case in that in *Hibdon* the injured passenger was a guest unrelated to the driver, the language used by the *Hibdon* court is still important in analyzing the legislative intent of Section 7–324(e).

> The intention of the legislature in passing the [Oklahoma Financial Responsibility] Act was to make drivers and owners responsible for injury or loss they cause to *any person*, including *passengers* [and] therefore . . . the passenger exclusion in the motor vehicle liability policy is contrary to the intention of the [Oklahoma Financial Responsibility] Act and is therefore void. *Id.* (Emphasis added.)

It is important to note that when the legislature amended Section 521(e) it eliminated both the guest passenger and the family member passenger language. It could have retained one category or both categories but it chose to delete them both. However, to use the absence of this statutory language as a basis for allowing the present appellant to recover is to ignore the meaning of the language omitted in 1961.

The language deleted in 1961 read as follows: guest passenger or member of the family of the *insured* residing in the same

household. The appellant was more than a mere member of the family of the *insured*; she was the *insured*. Her relationship with the defendant Looney surpasses mere household member status. Her relationship places her within the policy definition of named insured. Surely the legislature, in amending Section 521(e) did not intend to allow the named insured, although a passenger, coverage under this section.

As stated in *Wheeler v. State Farm Mutual Automobile Insurance Co., 438 F.2d 730 (10th Cir. 1971)*, if the driver

> were being sued by persons other than the 'named insured,' there could be no question but that State Farm [the insurance company] would be obligated to defend and indemnify him. When, however, the suit is brought against him by the named insured in the policy it is a different case. Here he [the driver] is indeed embraced within the term insured as it is defined in the policy, but it does not follow that he is entitled to the protection of the policy when he is being used by the named insured.

> As we read the policy as a whole, it is our conclusion that it was designed to protect the named insured and others within the definition of insured against actions by *third persons*. *Id.* at 732.

Although the specific fact situation in *Wheeler* differs in that *Wheeler's* driver was operating the automobile with the permission of the owners and was sued by the injured owner–passenger, the basic fact pattern is the same: policy defined insureds were injured and the insurance companies denied liability because of exclusions in the insurance policies.

In 1976, the Oklahoma legislature enacted the Compulsory Liability Insurance provisions of the Financial Responsibility Act at Title 47, Sections 7–601 through 7–606. Section 7–601 provides in part that

> [e]very owner of a motor vehicle registered in this state . . . shall, at all times, maintain in force with respect to such vehicle security for the payment of loss resulting from the liability imposed by law for bodily injury . . . sus-

tained by *any person* arising out of the ownership, maintenance, operation or use of such vehicle. 47 O.S. (Supp.1978) § 7–601. (Emphasis added.)

The purpose of this section is, as its title denotes, to compel motor vehicle owners to maintain liability insurance. The purpose is not to determine proper policy exclusions. To focus on two words (*any person*) as the appellant has done to find statutory authorization for the appellee's indebtedness is to misconstrue the intent of the statute and to ignore the language of Section 7–324, the proper statute for determining exclusion validity.

Based on this analysis, we therefore agree with the decision reached in *Farmers Insurance Co. v. McClain, 603 F.2d 821 (10th Cir. 1979)*. In *McClain*, the basic fact pattern was even more attenuated since the driver was only acting with the permission of the owner and the injured passenger was the common law wife of the driver. While the court did not discuss any statutory authority, it nevertheless, in construing the same exclusion clause as in the present case, ruled for the insurance company. The court held that

> [t]he exclusion is clear and unambiguous and provides that the policy does not apply 'to the liability of *any* insured for bodily injury to (a) any member of the same household of *such* insured except servants, or (b) the *named* insured.' It is agreed that Gary Watson [the driver], though not the named insured, was nonetheless an insured under the terms of the policy. Thus the term 'any insured' appearing in the household exclusion was clearly intended to be applicable to permissive users as well as the named insured. It is also agreed that at the time of the accident Marianne Montgomery [the injured passenger] was Watson's common–law wife and was a member of his household. The exclusion obviously fits . . . [this] fact situation. *Id.* at 823–24.

■ The appellant has also contended that the policy exclusions operate to deny her equal protection under the law. She

argues that the policy exclusions deprive married women as a class of the rights guaranteed by the equal protection clause of the Fourteenth Amendment of the United States Constitution.

In applying the equal protection clause, the United States Supreme Court

has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. . . [T]hat amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification 'must be reasonable, not arbitrary, and must rest upon same ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'

*Reed v. Reed, 404 U.S. 71, 75–76, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971)* (quoting *Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920)).*

While in the present case the statute does not expressly create the class, the legislative intent and public policy rationale found in the statute does allow the creation of a class by way of policy exclusions. While the appellant argues that the class is comprised of married women who by policy definition qualify as named insureds and family members, the class should probably not have been limited to married women, since spouses of both sexes are affected. However, regardless of the makeup of the class, an examination of the rationale behind the exclusions and the Financial Responsibility Act will show that while this class may be denied coverage by contractual provisions, that denial has a rational relationship in achieving a legitimate governmental goal.

The Supreme Court of Arizona, in interpreting statutory language similar to that

found in the Oklahoma statutes, stated that:

[t]he Financial Responsibility Act has for its principal purpose the protection of the *public* using the highways from financial hardship which may result from the use of automobiles by financially irresponsible persons.

*New York Underwriters Insurance Co. v. Superior Court of Arizona, 104 Ariz. 544, 546 P.2d 914, 915 (1969),* (emphasis added) (quoting *Schecter v. Killingsworth, 93 Ariz. 273, 380 P.2d 136, 140 (1963)).*

Therefore, since the purpose of the statutes is to protect the public and "[t]he primary purpose of the family–household exclusion clause is to protect the insurer against collusive or friendly lawsuits," *Lee v. State Farm Mutual Automobile Insurance Co., 265 Or. 1, 5, 507 P.2d 6, 8 (1973),* the appellant cannot contend that she is being denied equal protection under the laws. The appellant's relationship with the defendant Looney does not qualify her as a member of the public that the statute was designed to protect but instead it brings her squarely within the public policy reasoning for allowing such exclusions.

The appellant has also contended that due to a conformation clause [3] contained in the insurance policy, the terms of the policy are amended to conform to Oklahoma law and thereby void the exclusion clauses. This conclusion is based, however, on the interpretation given by the appellant to the statutes in question. In light of the foregoing discussion of Oklahoma law, the policy terms in question do not conflict and therefore the appellant's argument is without merit.

 The appellant has further contended that the exclusions contained in the policy are unconstitutional as applied to her since she did not freely enter into a private contract wherein she was a named insured. The appellant bases her argument on the facts that the policy was issued solely to the

---

**3.** The conformation clause reads as follows: Policy terms which conflict with the statutes

of the state wherein this policy is issued are hereby amended to conform to such statute.

defendant Looney and that other insurance companies have deleted these exclusion clauses. To qualify as an "insured" under the contract, no signature is required beyond that of the defendant Looney's signature. As in *McClain, supra*, the court held the exclusion clauses valid and applicable to the injured spouse even though she was the common–law wife of a driver who was only operating the automobile with the permission of the named insured–owner. Surely neither the permissible user nor his injured wife had signed any insurance contract with regard to that particular automobile.

The fact that some other insurance companies no longer include in their policies such exclusion clauses has no bearing on this case. The defendant Looney has the freedom to contract with whichever company he so desires and to be bound by whichever provisions he so includes in his contract.

■ The appellant's final contention is that the appellee Farmers acted in bad faith by refusing to defend or to settle. This argument assumes that Farmers owed a duty to the defendant Looney and that it breached that duty by refusing any coverage. Farmers had reason to believe that it owed no duty to defend Mr. Looney and informed him of such reasoning by letter. Farmers has not intentionally disregarded the defendant Looney's financial interests since it has never assumed any responsibility for his financial interests in this matter at all. Farmers has denied coverage from the beginning of the litigation–a different situation than if it had accepted responsibility for the lawsuit and then acted carelessly or in less than a diligent manner. Therefore, since Farmers had reason to believe it owed no duty to defend the insured and did not do so, it did not act in bad faith.

Based upon the foregoing authority, we hold the order of the trial court to be AFFIRMED.

LAVENDER, C. J., IRWIN, V. C. J., and HODGES, BARNES, SIMMS, DOOLIN and OPALA, JJ., concur.