EQUITY MUTUAL INSURANCE COMPANY, a foreign corporation, Plaintiff,

v.

SPRING VALLEY WHOLESALE NURSERY, INC., an Oklahoma corporation; State Department of Highways and Transportation, a commission created by the State of Texas; the Estate of Hank Evens, through the administrator William A. Nobels; and Sue Evens a/k/a Sue Makin, widow of Hank Evens, deceased; and Oklahoma Kansas and Texas Railroad, Defendants,

National Indemnity Company, a foreign corporation, Intervenor and Cross–Petitioner.

No. 66443.

Supreme Court of Oklahoma.

Dec. 8, 1987.

**5.** See *Cunningham v. Ins. Co. of North America,* 213 Va. 72, 189 S.E.2d 832 (1972).

Richard D. Gibbon, Oliver W. Arbogast, Jr., Messrs. Gibbon, Gladd & Associates, Tulsa, for plaintiff.

Harry A. Parrish, Steve Wilkerson, Richard D. Wagner, Messrs. Knight, Wagner, Stuart, Wilkerson & Lieber, Tulsa, for defendant Spring Valley Wholesale Nursery, Inc.

A. Camp Bonds, Jr., Messrs. Bonds, Matthews, Bonds & Hayes, Muskogee, for defendant Oklahoma Kansas and Texas R.R.

Steven E. Holden, Melvin C. Weiman, Ray H. Wilburn, Messrs. Wilburn, Masterson & Holden, Tulsa, for intervenor and cross-petitioner Nat. Indem. Co.

Jim Mattox, Atty. Gen. of Texas, Austin, Tex., for defendant State of Texas.

OPALA, Justice.

The United States District Court for the Northern District of Oklahoma certified for this court's answer, pursuant to the Uniform Certification of Questions of Law Act, 10 O.S.1981 §§ 1601–1612, three questions of law:

1. Is it in violation of public policy in Oklahoma for the insurer and insured to agree that liability insurance coverage of a commercial vehicle does not apply beyond a 200–mile radius?

2. If the court finds it is not in violation of public policy, would such a limitation apply to liability claimants and additional insured who have no knowledge of the radius endorsement?

3. Is primary insurance carried by Equity Mutual Insurance Company [owner's insurer] or National Indemnity Company [permissive user's insurer]?

We answer the first question in the affirmative and hold that a 200–mile radius limitation in an owner's or operator's liability policy obtained in compliance with Oklahoma's compulsory liability insurance laws, 47 O.S.Supp.1982 §§ 7–600 et seq., contravenes the underlying statutory policy and is void insofar as it limits the minimum coverage required by the cited statute.

Because our affirmative answer to the first question is qualified, we must answer the second question as to the application of the 200–mile radius limitation to liability claimants and additional insured for coverage *additional* to the minimum required by law.[1] We hold that an unambiguous geographical exclusion clearly set forth in a vehicle liability policy which is binding on the insured is also binding on liability claimants and additional insureds as to coverage above the statutory minimum, even if such claimants and additional insureds were unaware of the exclusion.

In answer to the third question, we hold that absent an agreement between the owner of a commercial vehicle and a permissive user, when one or more policies provide primary coverage for the same loss, that loss shall be shared by the insurers. Absent concurring provisions in the policies for apportionment, each insurer's share will be based on the ratio its policy limit bears to the cumulative limit of all concurrent policies.

Alternatively, when both the owner's insurer and the permissive user's insurer provide primary coverage for the same loss and the owner and permissive user have

---

**1.** Although the excess coverage problem was tendered in the intervenor-insurer's brief as "a collateral issue," we found it fairly comprised in the questions certified for our answer.

agreed that one will provide primary coverage, we hold that such an agreement may be given effect and other primary coverage treated as excess.

Alternatively, when none of the concurrent policies provides primary coverage, we hold that (a) an excess clause controls over both a pro rata clause and an escape clause, (b) an escape clause controls over a pro rata clause and (c) conflicting "other insurance" clauses cancel each other, making both policies primary.

## ANATOMY OF THE FEDERAL LITIGATION

The federal district court has asked this court to decide these questions on the basis of the following facts:[2]

2. The parties adopted the following agreed material facts:

"*CERTIFICATION OF QUESTION*
Parties relevant to the certified question:
A—Spring Valley Wholesale Nursery Incorporated
B—Equity Mutual Insurance Company
C—Hank J. Evens
D—National Indemnity Company
STATEMENT OF FACTS
Without prejudice to these parties in future proceedings, the parties agree to the following for the purposes of this Certified Question.
1. A owned tractor insured with B.
2. C owned trailer insured with D.
3. C borrowed tractor from A for his own use.
4. A requested of C to have insurance coverage for the tractor.
5. C was operating tractor-trailer outside of 200 mile radius as provided in the policy between D and C."

3. The federal court file in the case reflects that the owner's insurer seeks a judgment declaring his obligation to the named defendants: the owner of the truck, the estate of the deceased permissive user, the widow of the permissive user and the defendant railroad involved in the accident. The permissive user's insurer intervened.

4. See 47 O.S.Supp.1982 §§ 7–600 et seq.
The federal court file in the case indicates that the controversy resulted from an August 25, 1983 accident which involved the tractor-trailer. We consider the obligation of the insurers in light of the law in force at the time of the accident. While in some instances subsequent amendments may be considered in ascertaining legislative intent in formerly enacted statutes, *Letteer v. Conservancy District No. 30*, Okl., 385 P.2d 796, 801 [1963], that rule would not be of

The owner's insurer issued to the owner a policy providing liability coverage for a tractor. The permissive user borrowed the tractor. The owner requested that the permissive user obtain insurance coverage for the tractor. The permissive user owned a trailer insured by the intervenor-insurer. The policy insuring the trailer limited coverage to an area within 200 miles of the permissive user's address. The permissive user was operating the borrowed tractor with his own trailer attached outside the 200–mile radius.[3]

## ANALYSIS, DISCUSSION AND ANSWER

### CERTIFIED QUESTION I

In 1976 the Oklahoma legislature enacted the Compulsory Insurance Law,[4] now codi-

any assistance here because all subsequent amendments deal with matters that are irrelevant to the problem before us. For post-accident amendments and additions to the Oklahoma Financial Responsibility Law, see Okla. Sess.L.1984, Ch. 181 § 2 and Ch. 253 § 3; Okla. Sess.L.1985, Ch. 129 § 1; Okla.Sess.L.1986, Ch. 45 § 1, Ch. 279 § 17 and Ch. 138 § 1 and Okla. Sess.L.1987, Ch. 5 §§ 154 and 155.
The pertinent terms of 47 O.S.Supp.1982 § 7–600(1) are:
"As used in Article VI, chapter 7 of Title 47 of the Oklahoma Statutes:
1. 'Owner's policy'. An owner's policy of liability insurance:

\* \* \* \* \* \*

b. shall insure the person named therein and insure any other person, except as provided in subparagraph c of this paragraph, using an insured vehicle with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, operation or use of such vehicle,
c. may provide for exclusions from coverage in accordance with existing laws, \* \* \*."
The pertinent provisions of 47 O.S.Supp.1982 § 7–601(B) are:
"... [E]very owner of a motor vehicle registered in this state, other than a licensed used motor vehicle dealer, shall, at all times, maintain in force with respect to such vehicle security for the payment of loss resulting from the liability imposed by law for bodily injury, death and property damage sustained by any person arising out of the ownership, maintenance, operation or use of the vehicle. Every person, while operating or using a motor vehicle registered in this state which is not owned by such person, shall maintain in force security for the payment of loss resulting

fied in Article VI of the Financial Responsibility Act.[5] Its terms mandate that all vehicle owners maintain liability insurance or other authorized security at not less than the minimum required by 47 O.S.1981 § 7–204 [6] of the Financial Responsibility Act unless a vehicle is exempt by statute. In addition, all operators of motor vehicles are required to maintain liability coverage unless such coverage, which does not exclude the operator as an insured, is provided by the owner.[7]

The statute specifically requires "security for the payment of loss resulting from the liability imposed by law for bodily injury, death and property damage sustained by any person arising out of the ownership, maintenance, operation or use of ... [a] vehicle." [8] The manifest purpose of the legislature, expressed in the text of the statute, is to provide compensation for injury or loss to members of the public with claims that are actionable. When a policy expressly states that it provides coverage required by Oklahoma's compulsory liability insurance laws,[9] the policy must be strictly construed against the insurer by a standard consistent with its terms *and*

---

> from the liability imposed by law for bodily injury, death or property damage sustained by any person arising out of the operation or use of the vehicle, unless such security has been provided by the owner in accordance with this section which does not exclude said person from coverage."

The pertinent provisions of 47 O.S.Supp.1982 § 7–600.1(B) are:

> "Excess or additional *coverage. A policy may* also grant any lawful coverage in excess of or in addition to the coverage specified ... and such excess or additional coverage shall not be subject to the provisions of the Compulsory Insurance Law."

**5.** The Financial Responsibility Act is codified in Chapter 7 of Title 47 O.S.1981 §§ 7–101 et seq.

**6.** The pertinent provisions of 47 O.S.1981 § 7–204(a) of the Financial Responsibility Act are:

> "No policy or bond shall be effective ... unless such policy or bond is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than Ten Thousand Dollars ($10,000.00) because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, to a limit of not less than Twenty Thousand Dollars ($20,000.00) because of bodily injury to or death of two or more persons in any one accident, and if the accident has resulted in injury to or destruction of property to a limit of not less than Ten Thousand Dollars ($10,-000.00) because of injury to or destruction of property of others in any one accident."

**7.** The Financial Responsibility Act also contains requirements for proof of financial responsibility for high risk drivers. See Articles II (47 O.S.1981 §§ 7–201 et seq.) and III (47 O.S.1981 §§ 7–301 et seq.). Articles II and III were enacted in 1965 and, though related to Article VI in subject matter, are separate provisions with a different legislative purpose. The contents in each article are not necessarily overlapping nor applicable to the whole; i.e., exclusions allowed in one may not apply to the other. In *Young v. Mid–Continent Cas. Co.,* Okl., 743 P.2d 1084, 1087 [1987] this court specifically held that allowable exclusions for a compulsory liability insurance policy are not to be determined from § 7–324 of the statute relating to high risk drivers. See *Beavin v. State ex rel. Department of Public Saf.,* Okl., 662 P.2d 299, 302 [1983].

**8.** 47 O.S.Supp.1982 § 7–601(B).

**9.** Intervenor-insurer does not argue that because the harmful event occurred in Texas, Oklahoma statutory policy does not govern the construction the coverage is to receive.

Neither does the intervenor-insurer argue that its policy was issued in compliance with Corporation Commission requirements or the requirements of any other agency and is therefore exempt from the compulsory liability insurance laws under the terms of 47 O.S.Supp.1983 § 7–602A which provide in pertinent part:

> " * * * Motor carriers required by the Corporation Commission, or any other entity, to maintain liability insurance are hereby exempt from Sections 7–600 through 7–607 of this title."

Though this is not certified as a fact to this court, the intervenor-insurer specifically states in its brief-in-chief that its policy was issued pursuant to 47 O.S.1981 §§ 7–600—7–607. We need not address whether the intervenor-insurer's coverage was indeed exempt from the requirements of the compulsory liability insurance laws or whether the geographical limitation would be permissible for a policy issued in compliance with Corporation Commission requirements or requirements of other statutes or entities. Intervenor-insurer does argue that the exemption in 47 O.S.Supp.1983 § 7–602A is evidence of legislative intent to treat commercial vehicle coverage differently even when it was provided pursuant to the compulsory liability insurance laws. The conclusion that a geographical limitation in a commercial policy would somehow be consistent with legislative policy does not seem to be logically deducible from the argument's assumed premise.

with the statutory policy it embodies.[10] A liability policy which confines coverage to a 200–mile radius would not provide security for even the members of the Oklahoma public. Though the compulsory liability insurance laws do not specifically state how far—in terms of geographic radius—coverage must extend,[11] the statutes must be broadly construed to accomplish the legislative aim. When dealing with one another in conformity to the law, the insurer and insured may not negotiate for coverage which unreasonably limits the range of protection the law affords.[12] Although the 1982 amendments to the compulsory statutes allow for some freedom of contract,[13] that freedom cannot extend to territorial limitations which in light of the statutes' manifest purpose would produce an absurd result. Because a 200–mile radius limitation from any geographical point in this state could exclude from coverage a loss arising within the state, it is an unreasonable limitation. We hold that when liability insurance is issued in compliance with compulsory insurance laws, statutory policy *at the very minimum* requires coverage for all actionable claims which may arise within the state. We do not hold by this opinion that the statute requires coverage only for losses within the state, just as we do not hold that the statute requires coverage for losses in all states. Neither holding is compellable by the language of the statute or by the policy that led to its enactment. Until such a time as the Legislature so defines the geographical perimeter of the coverage required by the statute, we hold that a geographical exclusion shall be judged according to whether it reasonably complies with the manifest purpose of the compulsory insurance laws.[14]

National jurisprudence on this issue is scarce. Most of the cases addressing geographical exclusions in insurance policies were decided prior to the enactment of compulsory insurance laws. Since then, a New York court held a 100–mile exclusion void as contrary to law.[15] The Kansas Supreme Court condemned a household and garage shop exclusion as violative of compulsory insurance laws.[16] A South Carolina court held a use limitation contravened its compulsory insurance laws.[17]

The Oklahoma Court of Appeals held that a passenger exclusion in a liability policy issued in compliance with Articles II

---

**10.** See, *Utilities Ins. Co. v. Potter,* 188 Okl. 145, 105 P.2d 259, 263 [1940].

**11.** The Financial Responsibility Act's requirements for proof of financial responsibility which apply to high risk drivers expressly require liability coverage within the United States and Canada. 47 O.S.1981 § 7–324(b)(2) and (d); see also footnote 7 *supra.*

**12.** See *Lovy v. State Farm Ins. Co.,* 117 Cal.App. 3d 834, 173 Cal.Rptr. 307, 312, [1981].

**13.** The terms of 47 O.S.Supp.1982 § 7–600(1)(c), *supra* note 4, provide that the owner's policy "may provide for exclusions from coverage in accordance with existing laws."

**14.** A holding requiring only that geographical exclusions be reasonable would perhaps allow a court to find in the future a policy exclusion limiting coverage to losses within the state reasonable for an insurance policy covering a commercial vehicle used only to deliver pizzas in Oklahoma City. On the other hand, should that same vehicle be used to deliver pizzas in Texhoma, a town which straddles the Oklahoma and Texas borders in the Panhandle, the exclusion limiting coverage to losses within the state might be found unreasonable. The two adjoining states having the longest common border with this state, into which the negligent Oklahoma motorist is most likely to roam, are Kansas and Texas. Both of those states require their residents to secure liability coverage for losses in Oklahoma (specifically for losses within the United States and Canada). Tex.Rev.Civ. Stat.Ann., art. 6701h [Vernon's 1977 and Supp. 1986–1987] and Kan.Stat.Ann. § 40–3107(b) [1984].

**15.** *Kasson & Keller, Inc. v. Centennial Ins. Co.,* 79 Misc.2d 450, 359 N.Y.S.2d 760, 765 [N.Y. 1974]. The court said the exclusion was not authorized by the Rules and Regulations of the Superintendent of Insurance.

**16.** *DeWitt v. Young,* 229 Kan. 474, 625 P.2d 478, 482 [1981]. The court indicated that allowable exclusions under compulsory insurance laws must be specifically set forth in the statute.

**17.** *Pennsylvania Nat. Mut. Cas. Ins. v. Parker,* 282 S.C. 546, 320 S.E.2d 458, 460–461 [App. 1984]. The policy limited coverage to vehicles not used for business or commercial purposes.

and III [18] of the Financial Responsibility Act contravened the intent of the act and was therefore void.[19] This court in *Looney v. Farmers Ins. Group* [20] considered the exclusion from coverage of one of the insureds in a policy issued in compliance with the Compulsory Insurance Law. The exclusion passed muster because the insureds in question were not intended as the statute's protected class.[21] The purpose of the law is to shield the public, not members of the named insured's household. Moreover, the family-household exclusion serves another public policy interest—that of protecting the insurer against collusive or friendly lawsuits.[22] The geographical exclusion in contest here, unlike the family-household exclusion in *Looney,* [23] strips of indemnity members of the public with actionable claims—the very class of persons the statute was intended to protect.

▆ The intervenor-insurer contends that public policy does not preclude parties from contracting to limit an insurer's liability and that it is not bound by the permissive user's contract with the owner to secure insurance. This argument is without merit. We deal here not only with contractual duties to third parties but also with a statutory mandate for the protection of the public. A 200–mile radius limitation is hence void to the extent that it unreasonably limits the minimum coverage required by the compulsory liability insurance laws.

## CERTIFIED QUESTION II

▆ Once it appears that the legislative purpose has been served, the statute's mandate is satisfied.[24] Consequently, freedom-of-contract principles control as to any vehicle coverage *in excess of that required by statute.*[25] To that end, the compulsory laws expressly provide that such additional coverage shall not be subject to the provisions of the statute.[26] The insured may find it to his advantage to accept a geographical limitation for additional coverage on a vehicle in return for a lower premium. Though permissible under the law, all such limitations and exclusions shall be strictly construed in favor of the insured [27] and in favor of the object to be accomplished by the policy.[28]

Though the liability policy is for the benefit of third-party claimants and additional insureds, they are strangers to the contract and are bound by its provisions even though they were unaware of any exclusions for which the parties contracted.[29]

## CERTIFIED QUESTION III

An insurance policy is to be treated as a contract and will be enforced according to its terms. In determining which insurer provides primary coverage, a brief overview of the common terms of coverage used in insurance contracts is appropri-

**18.** See footnote 7 *supra* for discussion of Articles II and III.

**19.** *Hibdon v. Casualty Corporation of America, Inc.,* Okl.App., 504 P.2d 878, 881–882 [1972]. The court said there was no mention in the statute of any right of an insurer to exclude any group from coverage other than insured's employees.

**20.** Okl., 616 P.2d 1138 [1980].

**21.** *Looney v. Farmers Ins. Group, supra* note 20 at 1142.

**22.** *Looney v. Farmers Ins. Group, supra* note 20 at 1142.

**23.** See footnote 20 *supra* at 1142.

**24.** *Moser v. Liberty Mut. Ins. Co.,* Okl., 731 P.2d 406, 409 [1987].

**25.** *Wiley v. Travelers Insurance Company,* Okl., 534 P.2d 1293, 1295 [1975].

**26.** 47 O.S.Supp.1982 § 7–600.1(B). See footnote 4 *supra* for the pertinent provisions of this statute; see also, *DeWitt v. Young, supra* note 16 at 483; *Estate of Neal v. Farmers Ins. Exch.,* 93 Nev. 348, 566 P.2d 81, 83 [1977] and *State Farm Mutual Auto. Ins. Co. v. Shelly,* 231 N.W.2d 641, 642 [Mich.1975].

**27.** *Timmons v. Royal Globe Ins. Co.,* Okl., 653 P.2d 907, 913 [1982].

**28.** *Wiley v. Travelers Insurance Company, supra* note 25 at 1296.

**29.** 15 O.S.1981 § 29 and *Allstate Ins. Co. v. Amick,* Okl., 680 P.2d 362, 365 [1984]; see also, 16 *Couch on Insurance 2d,* § 1:4 at p. 9 [2d ed. 1983].

**954**

ate.[30] *Primary coverage* is provided when, under the terms of the policy, the insurer is liable without regard to any other insurance coverage available.[31] *Excess coverage* or *secondary coverage* is provided when, under the terms of the policy, the insurer is liable for a loss only after any primary coverage—*other insurance*—has been exhausted.[32] A *pro rata clause* in a policy limits coverage to a proportionate share in relation to all coverage available for the same risk.[33] An *escape clause*, also known as a *no liability clause*, disclaims any and all liability if other insurance is available.[34]

■ Questions of conflict and apportionment of liability between or among insurers arise when more than one policy covers the same loss. By definition, of course, primary coverage up to the limits of the policy will be applied to a loss before resort is had to any excess coverage. Furthermore, when one policy provides pro rata coverage and another provides only excess coverage, the pro rata policy is to be treated as primary.[35]

■ When one policy has an escape clause that disclaims any liability if there is other available insurance and another policy provides only excess coverage, we follow the general trend that the "no liability" policy is deemed primary coverage.[36] This conclusion is based on the rationale that excess coverage is not "other available insurance" which would trigger the escape clause. On the other hand, we hold that between an escape clause and a pro rata clause, the escape clause will prevail and the pro rata coverage will be deemed primary.[37]

■ The conflict is compounded when concurrent policies have "other insurance" clauses which cancel each other. They may each provide only excess coverage leaving no primary coverage, or both may have escape clauses disclaiming liability if other insurance is available to cover the loss. When concurrent policies have such "other insurance" clauses which cancel each other, we hold that they are mutually repugnant and are to be disregarded, with the loss shared by the insurers on a pro rata basis.[38] Where the insurers have designated in their policies the same method of apportionment, the contracts will control. Absent concurring provisions for apportionment, coverage of the loss is to be shared on a pro rata basis according to the ratio each respective policy limit bears to the cumulative limit of all concurrent policies. For example, if one insurer has a policy limit of $100,000, another $200,000 and a third $300,000, the first would pay ⅙ of the loss up to $100,000, the second would pay ⅓ of the loss up to $200,000 and the third would pay ½ the loss up to $300,-000.[39]

**30.** See generally, 16 *Couch on Insurance 2d,* §§ 62:41—62:92 [2nd ed. 1983].

**31.** *Ind. Finishes & Systems v. Amer. Univ. Ins.,* 720 P.2d 382, 385 [Ore.App.1986], modified, 80 Or.App. 743, 724 P.2d 333 [1986]. See also *Union Indemn. Ins. Co. v. Certain Underwriters,* 614 F.Supp. 1015, 1017 [S.D.Tex.1985].

**32.** *Brownsville Fabrics, Inc. v. Gulf Ins. Co.,* 550 S.W.2d 332, 337 [Tex.Civ.App.1977] and *Union Indem. Ins. Co. v. Certain Underwriters, supra* note 31 at 1017.

**33.** *Maryland Cas. Co. v. Horace Mann Ins. Co.,* 551 F.Supp. 907, 909 [W.D.Pa.1982], affirmed 722 F.2d 664 [3rd Cir.1983].

**34.** *Maryland Cas. Co. v. Horace Mann Ins. Co., supra* note 33 at 909.

**35.** *Thurston National Insurance Co. v. Zurich Insurance Co.,* 296 F.Supp. 619, 623 [W.D.Okl. 1969].

**36.** *Offshore Logistics Services, Inc. v. Mut. Marine Office,* 462 F.Supp. 485, 493–494 [E.D.La. 1978] and *Associated Indem. v. Ins. Co. of North America,* 68 Ill.App.3d 807, 25 Ill.Dec. 258, 267, 386 N.E.2d 529, 538 [1979].

**37.** *Songer v. State Farm Fire & Cas. Co.,* 91 Ill.App.3d 248, 46 Ill.Dec. 715, 718, 414 N.E.2d 768, 771 [1980].

**38.** *Western Cas. and Sur. v. Universal Underwriters,* 232 Kan. 606, 657 P.2d 576, 580 [1983].

**39.** *Bill Atkin Volkswagen, Inc. v. McClafferty,* 689 P.2d 1237, 1242 [Mont.1984] and *Wolverine Ins. Co. v. State Auto. Mut. Ins. Co. of Columbus, O.,* 415 F.2d 1182, 1185 [6th Cir.1969] (applying Michigan law). See generally, Note: *The Dilemma of Concurrent Coverage: Carriers Insurance Co. v. American Policyholders Insurance Co.,* 32 Me.L.Rev. 471 [1980] (discussing methods for assigning liability when concurrent coverage exists).

In the case before us, the owner of the commercial vehicle requested the permissive user to secure primary coverage for the tractor. *The facts stipulated for this court's use do not reflect whether such coverage was indeed secured.* The certified facts do show that the tractor was insured by the owner's insurer, and the trailer (owned by the permissive user) attached to the tractor was insured by the permissive user's insurer.[40] A private agreement cannot expand the terms of an insurance policy [41] but may be given consideration when concurrent commercial policies all provide primary coverage for the same loss.[42] In a commercial setting, it may be particularly beneficial to the parties and to the public for an agreement to assign responsibility for primary coverage to the permissive user who is in a better position to prevent a loss.[43] In that event, other available indemnity policies that are primary may be treated as excess. This view, which must be applied conformably to the general principle that contractual obligations cannot be expanded by agreements with strangers to the contract,[44] may not be invoked when the policy so secured provides only pro rata coverage or has a conflicting "other insurance" clause. In the latter instances, the loss will be shared on a pro rata basis.

Oklahoma's compulsory liability insurance laws do not dictate the determination of primary coverage. The 1982 amendments and additions to those laws allow an owner's policy to exclude an operator from coverage in accordance with existing law.[45] Moreover, an operator is required by the statute to maintain liability insurance only if he is excluded from the owner's coverage.[46] The federal court may find from the terms of the policies and from the guidelines set forth in this opinion that both policies provide primary coverage, that neither provides primary coverage or that only one provides primary coverage. Statutory policy is implicated only when insurers deny liability, not when they are in dispute as to which will provide primary coverage.

Lastly, the owner's insurer contends that its policy was not issued in contemplation of the tractor's use for hauling highly flammable crude oil. The insurer urges that equity will not permit a finding of primary liability when the true fact of the tractor's use was concealed. The argument is that had the owner's insurer known the tractor was being used to haul a hazardous substance, the premiums would necessarily have been higher to cover the risk. That contention can bring no comfort to the insurer. This court has said that when a policy provides coverage for the user who has been given the insured's general permission, the loss is covered by the policy even though a particular use was not con-

---

**40.** The federal court file in this case reflects that when involved in the alleged harmful event, the tractor and trailer were connected for use as a unit. The possible fact that neither of the insurer's policies covered both the tractor and the trailer would not mean that each may not be liable up to its policy limits for the total loss. Primary coverage on either vehicle will result in liability to the policy limits. See *Insurance Co. of North America v. Royal Indemnity Co.,* 429 F.2d 1014, 1019 [6th Cir.1970] and *State Auto. Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 456 F.2d 238, 240 [6th Cir.1972].

**41.** See *Am. Underwriters, Inc. v. Auto–Owners Mut. Ins. Co.,* 719 F.2d 900, 902 [7th Cir.1983] and 8A Appleman, *Insurance Law and Practice,* § 4911 at p. 493 [rev. 1981].

**42.** *Truck Ins. Exchange v. Liberty Mut. Ins. Co.,* 102 Ill.App.3d 24, 57 Ill.Dec. 503, 505, 428 N.E. 2d 1183, 1185 [1981]; see also *Executive Car &*

*Truck Leasing v. DeSerio,* 470 So.2d 21, 24 [Fla. App. 4 Dist.1985] and *Carolina Cas. Ins. Co. v. Underwriters Ins. Co.,* 569 F.2d 304, 314 [5th Cir.1978]; but see *National Indemnity v. Continental Ins.,* 61 Md.App. 575, 487 A.2d 1191 [1985].

**43.** See, *Pacific Indemnity Co. v. Liberty Mutual Insurance Co.,* 269 Cal.App.2d 793, 75 Cal.Rptr. 559, 565 [1969].

**44.** *Carolina Cas. Ins. Co. v. Underwriters Ins. Co.,* supra note 42, *Underwriters, Inc. v. Auto–Owners Mut. Ins. Co.,* supra note 41 at p. 902 and 8A Appleman *supra* note 41 at § 4911 p. 493.

**45.** For the pertinent text of 47 O.S.Supp.1982 §§ 7–600 and 7–601(B), see footnote 4 *supra.*

**46.** For the pertinent text of 47 O.S.Supp.1982 § 7–601(B), see footnote 4 *supra.*

templated.[47]

DOOLIN, C.J., HARGRAVE, V.C.J., and LAVENDER, SIMMS, KAUGER and SUMMERS, JJ., concur.

HODGES, J., concurs in Part I and is not voting upon Parts II and III of the opinion.

ALMA WILSON, J., concurs in part and dissents in part.

ALMA WILSON, Justice, concurring in part and dissenting in part:

I concur only insofar as this opinion holds a geographical exclusion void as contrary to 36 O.S.1981 § 3636.

I dissent to any implication which may be construed as limiting coverage which has been contracted for, though such coverage may well be beyond minimum statutory requirements. This issue is not factually presented by this case.

---

**47.** *Spears v. Preble,* Okl., 661 P.2d 1337, 1341     [1983].