1998 OK CIV APP 156

**OKLAHOMA FARMERS UNION MUTUAL INSURANCE COMPANY, Appellant,**

v.

**JOHN DEERE INSURANCE COMPANY, Appellee.**

No. 89824.

Court of Civil Appeals of Oklahoma, Division No. 2.

May 26, 1998.

Rehearing Denied July 6, 1998.

Certiorari Denied Oct. 21, 1998.

Mort G. Welch, Welch, Jones & Smith, P.C., Oklahoma City, for Appellant.

O. Clifton Gooding, Joel C. Hall, Gooding & Mulinix, Oklahoma City, for Appellee.

*OPINION*

TAYLOR, C.J.

¶ 1   Plaintiff, Oklahoma Farmers Union Mutual Insurance Company (OFU), appeals from the trial court's grant of John Deere Insurance Company's (Deere's) motion for summary judgment in this action to determine OFU's right to subrogation against Deere.  Following a review of the record and the applicable law, we affirm.

STANDARD OF REVIEW

¶ 2   This matter was before the trial court on cross motions for summary judgment.

Summary judgment is appropriate only when the record reveals no issue of material fact, and that one party is entitled to judgment as a matter of law. *First Nat'l Bank and Trust Co. of Vinita v. Kissee*, 1993 OK 96, 859 P.2d 502. Here, the record reveals the essential facts are not in dispute, and that the issue for our determination concerns interpretation of the parties' insurance contracts under Oklahoma law. We thus are presented with an issue of law, which we review pursuant to a de novo, or non-deferential, standard of review. *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, 859 P.2d 1081.

### Factual Background

¶ 3 In May 1994, Jerry Hausman delivered a car to Hudiburg Chevrolet, Inc., a Midwest City auto dealership and garage, for service. The car Jerry Hausman delivered— a 1987 Oldsmobile—was owned by Jerry's mother, Dollie Mae Hausman. Hudiburg then loaned Jerry a car to drive—a Geo Prizm—while Dollie's car was in the shop. Before taking the Prizm, Jerry signed an agreement stating that while the car was in his possession, his insurance policy would "bear the Primary Coverage; with the Dealer having Secondary Coverage." Jerry wrecked the Prizm. His passenger, Randy Laughlin, was injured. Laughlin made a claim for damages against Jerry Hausman under three insurance policies: a policy issued by OFU to Jerry Hausman, insuring a 1981 Chevrolet pickup and having a liability limit of $10,000 (the OFU/Jerry policy); a policy issued by OFU to Dollie Hausman, having a liability limit of $25,000 (the OFU/Dollie policy); and a garage liability policy issued by Deere to Hudiburg Chevrolet, having a liability limit of $500,000.

¶ 4 Deere denied any liability coverage under its policy, and differed with OFU as to the priority of its obligation. Ultimately, the parties settled, with each insurance carrier reserving its rights to seek a court determination of whether the Deere/Hudiburg policy's liability provisions applied at all, and if so, the priority of such coverage. The total settlement was $80,000, paid as follows: (1) $10,000 by OFU under the liability coverage of the OFU/Jerry policy; (2) $25,000 by OFU under the liability coverage of the OFU/Dollie policy; (3) $25,000 under the uninsured motorist (UM) coverage of the OFU/Dollie policy; and (4) $20,000 by Deere under the UM coverage provisions of Hudiburg's policy.

¶ 5 OFU argues that liability coverage under the Deere policy should be paid prior to liability coverage under the OFU/Dollie policy, and that the Deere policy liability coverage would fully compensate Laughlin for his injuries. Deere contends its policy provides no liability coverage for Laughlin's claim at all.

¶ 6 The Deere/Hudiburg garage policy provides liability insurance for "all sums an insured legally must pay" because of injury caused by an accident involving use of a "covered auto." The Prizm indisputedly was a "covered auto." The definition of an "insured" under Section II.A.1(a) of the policy includes Hudiburg Chevrolet as well as "[a]nyone else while using with your permission a covered 'auto'," *except:*

(d) Your customers, if your business is shown in the Declarations as an "auto" dealership. However, if a customer of yours:

(i) Has no other available insurance (whether primary, excess or contingent), they are an "insured" but only up to the compulsory or financial responsibility law limits where the covered "auto" is principally garaged.

(ii) Has other available insurance ... less than the compulsory or financial responsibility law limits where the covered "auto" is principally garaged, they are an "insured" only for the amount by which the compulsory or financial responsibility law limits exceed the limit of their other insurance.

¶ 7 Deere denied liability coverage under this provision. The basis for its denial was its characterization of Jerry Hausman as a Hudiburg "customer." Deere contended that Jerry was not an "insured" under the Hudiburg policy, because Jerry's own liability policy met Oklahoma's financial responsibility law requirements.

¶8 Under the OFU/Dollie policy, called a "family combination" policy, liability insurance is provided for "persons insured" for "all sums which the insured shall become legally obligated to pay as damages because of ... injury ... arising out of the ownership, maintenance or use of the owned automobile." The "owned automobile" definition includes "a temporary substitute automobile." "Persons insured" under the policy include the named insured, i.e., Dollie Mae, as well as "any other person using such automobile with the permission of the named insured." It is undisputed that Jerry Hausman was an "insured" under the OFU/Dollie policy. The OFU/Dollie policy also contains the following "excess" clause concerning "other insurance" regarding temporary substitute vehicles:

> If the insured has other insurance against a loss ... the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; *provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance.* (Emphasis added.)

## ANALYSIS

¶9 OFU argues the trial court erred in upholding Deere's denial of coverage under the Hudiburg garage policy. First, OFU contends the trial court incorrectly interpreted the policy, and that Jerry is an "insured" under that policy. Second, OFU argues that, because Jerry is an insured under the policy, the Deere policy "deprives a customer who is using a covered auto ... of any liability protection under that policy if there is any other type of liability insurance applicable to the customer's use of the vehicle in an amount required by the compulsory insurance law." Thus, OFU argues, the Deere policy "disclaims any and all liability if other insurance is available" and meets the criteria of an "escape clause" as that term is defined in *Equity Mutual Insurance Co. v. Spring Valley Wholesale Nursery, Inc.,* 1987 OK 121, 747 P.2d 947. As such, OFU contends the "excess" clause of the OFU/Dollie policy prevails over the garage policy, the garage policy becomes "primary" coverage, and the OFU/Dollie policy does not apply at all.[1] We reject, however, OFU's basic argument that Jerry Hausman comes within the definition of an "insured" under Hudiburg's policy. Thus, the second part of the argument fails as well.

¶10 OFU attempts to bring Jerry Hausman within the definition of an "insured" under the garage policy by distinguishing the dealership and repair shop aspects of Hudiburg's business. According to OFU, customers of the repair shop are *not* excepted from coverage because Section II excepts Hudiburg's "customers, if your business is shown in the Declarations as an 'auto' dealership." In addition, OFU points to Section II.B.7 of the policy, which excludes from coverage:

> Any covered "auto" while leased or rented to others. But this exclusion does not apply to a covered "auto" you rent to one of your customers while their "auto" is left with you for service or repair.

¶11 OFU argues these clauses evidence an intent to except only customers of the auto dealership portion of the business. Deere contends OFU is attempting to draw a distinction in coverage that does not exist.

¶12 We find no Oklahoma case that previously has addressed this issue. Cases from other jurisdictions, however, indicate a split of authority. OFU relies heavily on *Stanfield v. Hartford Accident and Indemnity Co.,* 581 So.2d 340 (La.Ct.App.1991), and *Connecticut Indemnity Co. v. Cordasco,* 369 Pa.Super. 439, 535 A.2d 631 (1987). In these

---

1. "An *escape clause,* also known as a *no liability clause,* disclaims any and all liability if other insurance is available." 1987 OK 121, ¶19, 747 P.2d at 954. An "excess" or "secondary coverage" clause provides that "the insurer is liable for a loss only after any primary coverage—*other insurance*—has been exhausted." *Id.* The court in *Equity Mutual* held that as between an escape clause disclaiming all liability if other insurance is available, and a clause providing only excess coverage, the excess clause prevails over the escape clause, and the policy containing the "escape" clause is "deemed primary coverage." 1987 OK 121, ¶21, 747 P.2d at 954.

cases, the appellate courts held that clauses similar to the one in the Deere policy did not except garage customers from liability coverage under the garage policies in question.

¶ 13 Deere, on the other hand, relies on *Spurlin v. Merchants Insurance Co.,* 866 F.Supp. 57 (D.Mass.1994), *aff'd,* 57 F.3d 9 (1st Cir.1995). There, the district court, interpreting New York law, rejected *Stanfield* and *Cordasco.* Instead, it found that, because the garage policy did not expressly divide the garage owner's dealership and garage functions and defined "garage operations" to include all aspects of the business, it did not treat dealership customers differently than garage customers. 866 F.Supp. at 61. The court in *Spurlin* also noted that public policy underlying the *Stanfield* and *Cordasco* decisions disfavored all types of "no liability" or "escape" clauses. The same public policy did not apply in New York, which gave effect to such clauses as long as they assured coverage was provided up to the state's minimum financial responsibility limits. Our research indicates that a number of other jurisdictions have followed similar reasoning in similar situations, as well. *See, e.g., Continental Ins. Co. v. Pan Am. Fire and Cas. Co.,* 237 So.2d 43 (Fla.Dist.Ct.App. 1970); *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.,* 270 Md. 591, 312 A.2d 265 (Md.1973); *Davis v. De-Frank,* 33 A.D.2d 236, 306 N.Y.S.2d 827 (N.Y.App.Div.1970), *aff'd,* 27 N.Y.2d 924, 318 N.Y.S.2d 142, 266 N.E.2d 822 (1970).

■ ¶ 14 We believe Oklahoma law and public policy are more consistent with that discussed by the court in *Spurlin* than with the policy underlying the Pennsylvania and Louisiana decisions. In *Equity Mutual,* the Oklahoma Supreme Court did not indicate that "escape" clauses—or clauses of a similar nature—generally were against public policy in Oklahoma, or that such clauses would not be enforced in appropriate circumstances. The court did, however, specifically recognize that once the legislative purpose underlying the state's minimum financial responsibility laws has been served, then "freedom-of-contract principles control as to any vehicle coverage *in excess of that required by statute.*" 1987 OK 121, ¶ 17, 747 P.2d at 953. "An

insurance policy is to be treated as a contract and will be enforced according to its terms." 1987 OK 121, ¶ 19, 747 P.2d at 953. Here, it is undisputed that the requirements of the financial responsibility laws have been met by Jerry Hausman's own policy. There is no dispute concerning that portion of the coverage.

¶ 15 Pursuant to 15 O.S.1991 § 160, words of a contract are to be given their plain and ordinary meaning. We see nothing in the Deere/Hudiburg garage liability policy that expressly divides Hudiburg's auto dealership from its garage service functions. In fact, the definition of "garage operations," at Section VI.E of the policy, is identical to that of the garage owner in *Spurlin,* and does not distinguish between the operations at all:

"Garage operations" mean the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" include the ownership, maintenance or use of the "autos" indicated in SECTION I of this Coverage Form as covered "autos." "Garage operations" also include all operations necessary or incidental to a garage business.

¶ 16 Similarly, the policy language excepting Hudiburg's "customers" from liability coverage, unless they lack coverage required by Oklahoma's financial responsibility law, is unambiguous. The policy flatly excepts Hudiburg's "customers"—without further refinement of that term—if Hudiburg is an auto dealership, which it is.

¶ 17 Further, the exclusionary language on which OFU relies does not suggest that unlimited coverage is extended to autos rented or leased as part of Hudiburg's repair shop. Rather, the exclusion simply excepts such vehicles from its coverage, thereby leaving an avenue open for (1) potential coverage, as would arise if a shop customer did not have minimum insurance under state financial responsibility laws, or (2) additional coverage, which specifically was not provided in the declarations pages. OFU's reliance on this clause of the garage policy essentially asks us to conclude that coverage arises from an exclusionary clause. This is an interpretation we cannot accept. *See Globe Indem.*

*Co. v. Jordan,* 634 A.2d 1279, 1283 (Maine 1993) (exclusion clause can subtract from coverage granted elsewhere in the policy, but alone cannot establish coverage). The interpretation offered by OFU strains and, in our view, gives an unnatural meaning to, the contractual language in question.

¶ 18 Accordingly, we find no distinction implied in the Deere garage policy between auto dealership customers and garage service customers. Because he carries the minimum liability insurance required by Oklahoma's financial responsibility laws, Jerry Hausman is not an "insured" under Hudiburg's garage liability policy. The trial court correctly entered summary judgment in Deere's favor.

¶ 19 The trial court's judgment is AFFIRMED.

GOODMAN, P.J., and BOUDREAU, J., concur.