McHUGH, Circuit Judge,
concurring, in part, and dissenting, in part.
I join in the well-reasoned decision of the majority in all respects, except I dissent from Section II.B.2, on the pro rata apportionment of the loss between Philadelphia and Lexington.
Philadelphia appeals from the district court’s pro rata calculation, arguing that the court improperly used Lexington’s liability limit, rather than its policy limit, to calculate each insurer’s pro rata percentage share of the loss. Unlike the majority, I agree.
The rule in Equity Mutual is that:
When concurrent policies have such “other insurance” clauses which cancel each other, we hold that they are mutually repugnant and are to be disregarded, with the loss shared by the insurers on a pro rata basis. Where the insurers have designated in their policies the same method of apportionment, the contracts will control. Absent concurring provisions for apportionment, coverage of the loss is to be shared on a pro rata basis according to the ratio each respective policy limit bears to the cumulative limit of all concurrent policies.
Equity Mut. Ins. Co. v. Spring Valley Wholesale Nursery, Inc., 747 P.2d 947, 954 (Okla. 1987) (footnote omitted). Here, the mutually-repugnant policies each apportion liability based on the proportion that the insurer’s applicable “Limit of Insurance” bears to the “Limits of Insurance” of all insurance covering the loss. We must therefore determine the appropriate “Limit of Insurance” for each insurer.
The parties concede that Philadelphia’s policy limit was $7 million, and assume that this is the Limit of Insurance relevant to the pro rata calculation. But they dispute the proper limit under Lexington’s policy. The district court and the majority rely on paragraph 2 of the “Occurrence Limit of Liability Endorsement” in the policy to conclude that the Limit of Insurance under the Lexington policy is the amount of the adjusted claim after deductibles, or $6,014,359.06. I respectfully disagree.
The majority relies on subparagraph 2.a, which provides that “the liability of the Insurer(s) shall be limited to ... a.) The actual adjusted amount of loss, less applicable deductible(s).” This subpara-graph, as the majority notes, limits Lexington’s liability for the covered loss at issue to the adjusted amount, minus deductibles. But nothing in the Occurrence Limit of Liability Endorsement speaks to the “Limit of Insurance,” which is the measure expressly adopted by the other insurance provisions of both Lexington’s and Philadelphia’s policies for apportioning liability between insurers.
The “Limit of Insurance” of the Lexington policy is found on the Declarations page of the Lexington policy and expressly states: “ITEM 3. Limit of Insurance: $100,000,000., PER ANY ONE OCCURRENCE.” Indeed, the policy differentiates between “Limit of Insurance,” which it treats as a pre-determined, non-variable amount, and “liability,” which cannot be determined definitively until after a cov *1350 ered loss has occurred. The Limit of Insurance is thus defined as the maximum amount of insurance possibly available per occurrence, which is different than the “Limit of Liability” defined in the Occurrence Limit of Liability Endorsement. For example, had the adjusted losses from the Barnard Building fire, after deductibles, totaled $100 million, the Lexington policy would have covered the loss in full and the Limit of Insurance and Limit of Liability would be the same. But where, as here, the adjusted loss, less deductibles is $6,014,359.06, I would hold that the Limit of Insurance is $100 million and the Limit of Liability is $6,014,359.06. The policy defines the terms differently, and I would assume that Lexington used the term “Limit of Insurance” advisedly in adopting the method for proportioning insurer liability in the Other Insurance provision.
This reading, in addition to giving meaning to the distinct terms Limit of Insurance and Limit of Liability as used in the policy, makes sense. As Philadelphia’s Reply Brief explains:
Paragraph 2.a., on which Lexington relies, simply protects Lexington from paying more than [the] actual adjusted amount of loss, less any applicable deductibles. Philadelphia’s policy likewise provides that it will not pay more than the actual amount of the loss. See Aplt. App. at 125 (“If two or more of this policy’s coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.”). Neither of these provisions limiting the insurer’s obligation to payment of the actual amount of the loss affects the calculation of their respective pro rata shares.
Aplee. Reply Br. at 3-4. That is, Philadelphia’s policy had a Limit of Insurance of $7 million, but like Lexington’s policy, it had a Limit of Liability equal to the actual amount of the loss, less applicable deductibles.
Accordingly, if I agreed with the majority’s conclusion that the Limit of Insurance is equivalent to the Limit of Liability, I would apportion liability between Lexington and Philadelphia here on a % basis. This is because both policies limited recovery to the actual adjusted loss, less deductibles, or $6,014,359.06. And because insurance policies virtually without exception, limit recovery to the adjusted loss after deductibles are subtracted, the majority’s interpretation would result in insurers with mutually-repugnant excess coverage clauses sharing equally in the liability to the insured in almost every case. I do not read Equity Mutual or the specific Other Insurance clauses here as endorsing that result.
In the absence of “concurring provisions for apportionment,” Equity Mutual requires that liability be apportioned on. a pro rata basis based on the relationship of each insurer’s “policy limit” to the cumulative limit of both policies. Equity Mutual, 747 P.2d at 954, If the Lexington Other Insurance clause is read to apply the liability limit, but Philadelphia’s Other Insurance clause is interpreted to use the maximum policy limit, the clauses are not concurring. That is, the measures of apportionment called for under each Other Insurance clause are not the same. Under those circumstances, Equity Mutual instructs that the liability is apportioned between the insurers based on the policy limits.
In my view, this allocation of responsibility is designed to apportion liability based on a comparison of the relative risks undertaken by each insurer, which should also be reflected in the premiums *1351 charged.[1] Lexington issued a policy with a Limit of Insurance of $100 million and Philadelphia issued a policy with a Limit of Insurance of $7 million. Thus, the “cumulative limit of all concurrent policies,” Equity Mutual, 747 P.2d at 954, and the “Limits of Insurance of all insurance covering” the Barnard building, would have been $107 million. I would hold that each insurer is liable “on a pro rata basis according to the ratio each respective policy limit bears” to that amount. Equity Mutual, 747 P.2d at 954. This would make Lexington liable for 10%07 = 93.46% of the loss, and Philadelphia liable for ¾7 = 6.54% of the loss. See Am. Cas. Co. of Reading PA v. Health Care Indem., Inc., 520 F.3d 1131, 1136 (10th Cir. 2008) (requiring one insurer to pay a % share, and the other to pay a ⅛ share, as both policies provided excess coverage). Applied to the adjusted loss in this case of $6,014,359.06,1 would conclude that Philadelphia bears $393,462.74 of the loss, and Lexington bears $5,620,896.32.

. Lexington undertook a much greater risk with respect to the Barnard building than Philadelphia. And while almost all of Philadelphia’s risk was realized, Lexington’s potential liability was over ninety percent greater than that realized.