**LUMBERMENS MUTUAL CASUALTY COMPANY, a corporation, Plaintiff in Error,**

**v.**

**IOWA HOME MUTUAL CASUALTY COMPANY, a corporation, Defendant in Error.**

No. 40368.

Supreme Court of Oklahoma.

May 25, 1965.

Rehearing Denied Aug. 3, 1965.

Rinehart, Morrison & Cook, Oklahoma City, for plaintiff in error.

Pierce, Mock, Duncan, Couch & Hendrickson, Oklahoma City, for defendant in error.

IRWIN, Justice.

Lumbermens Mutual Casualty Company, referred to as Lumbermens, and Iowa Home Mutual Casualty Company, referred to as Iowa, by agreement and equal contributions, settled certain claims arising out of a motor vehicle accident. Lumbermens commenced proceedings against Iowa to recover the amount paid by it and its expenses in settling the claims. Iowa, by cross-petition, sought to recover against Lumbermens the amount paid by it and its expenses in settling the claims.

On the date of the accident, Lumbermens carried liability insurance for Oklahoma Tire & Supply Company, referred to as OTASCO, in excess of other valid and collectible insurance that OTASCO had. On said date, Iowa carried liability insurance for Harold E. Smith on a pick-up truck.

Smith was a store manager for OTASCO. Lumbermens alleged and Iowa did not deny that Iowa's policy with Smith extended coverage to any person operating the pick-up with Smith's permission and to any firm legally responsible for the use of said vehicle.

One Ronald Gene Calvery, an employee of OTASCO, while operating Smith's pick-up with Smith's permission, and while in the course of his employment with OTASCO, was involved in an accident. Certain claims were made against Calvery and OTASCO as a result of this accident and the same were settled by Lumbermens and Iowa, each making equal contributions in settlement of the claims.

The parties stipulated that if Iowa was legally obligated under the terms of its insurance policy with Smith for coverage to Calvery and OTASCO, that judgment should be for Lumbermens; and if Iowa was not legally obligated, judgment should be for Iowa.

Iowa defended the action on the grounds that Smith misrepresented material facts in obtaining the insurance policy, i. e., Smith stated in his application that the pick-up was not used in his occupation other than driving to and from work or for family purposes. Iowa argued that Smith actually used the pick-up for commercial purposes, i. e., to make deliveries for OTASCO; and since there were material misrepresentations in the application, there was no valid contract of insurance between Smith and Iowa ab initio.

Iowa also defended the action on the grounds that after the accident there had been a mutual rescission of the policy by Iowa and Smith and that such rescission cancelled the policy in toto.

The cause was submitted to the court and judgment was rendered for Iowa on its cross-petition. Lumbermens perfected its appeal from the order overruling its motion for a new trial.

## PROPOSITION I

The first issue to determine is whether Smith made material misrepresentations in the application for insurance which would invalidate the insurance policy ab initio. In this connection, Lumbermens does not argue that if Smith had made the misrepresentations and Iowa had relied upon such misrepresentations, the insurance policy would not have been void ab initio; but contends that Iowa did not rely on any statements of Smith, but upon the independent knowledge of its soliciting agent, (Fischer) and upon its own independent investigations in issuing the policy to Smith.

The testimony of Iowa's soliciting agent (Fischer) was submitted by deposition which discloses: That prior to the negotiations for the policy of insurance under consideration with Iowa, Fischer was an agent for Hardware Mutual and Smith had a liability policy with that company which had the same risk coverage as the one herein involved; that he "inherited Smith as a customer and had known Smith for eight or ten years; that he had a partnership arrangement for the production of the insurance business; that he had authority to issue what is termed "binders" for Iowa; that he obtained an oral application for the policy from Smith; that he contacted Iowa's home office with reference to classification of risk; that he had some question in his mind that Smith's policy with Hardware Mutual was underrated and he thought it should be commercially rated which would be higher than insurance for family use rates; that Iowa's home office told him to send the application in and the policy would be rated according to the retail credit report. This commercial automobile retail credit report stated that Smith used " * * * the pick-up to drive to and from work * * * no passengers. This is the primary uses of it, may use it sometimes for some household errands."

Fischer testified that he wrote the application in his office and that he had had personal contact with Smith before he prepared the application but not after he con-

tacted Iowa's home office; that he and Smith did not discuss how the pick-up should be rated but Smith told him "he could write his business and go ahead and write it"; that they didn't go into the rate problem because money wasn't a factor; that he thought the pick-up should be rated commercially because he knew the pick-up was used once or twice a week for deliveries and he was familiar with this; that he filled out the application and answered the various questions and Smith was not present; and that he (Fischer) signed the application and mailed it to Iowa and the policy was issued.

Fischer's further testimony discloses that he advised Iowa's home office that Smith's pick-up was occasionally used for delivery purposes and the reason he called the home office was to prevent a misunderstanding on the coverage.

Smith's testimony was submitted by deposition and it discloses, that the pick-up was used in many instances for commercial purposes for OTASCO and had always used it as such and that Fischer was aware of such use and they discussed it; that he gave permission to Calvery to drive the pick-up on the day of the accident; that Smith did not explain to Fischer the type of policy he wanted and that after the same was issued he did not read it; and that he did not sign or ever read the application for the insurance.

The secretary at Iowa's home office with whom Fischer testified that he talked with, stated she did not recall Fischer calling her, and that it is the duty of the agent to get information concerning the use of automobiles to be insured.

Iowa takes the position that even though its agent Fischer knew or had some knowledge that the pick-up would be used for commercial purposes and should have a commercial rating, the same would not permit Smith to secure an unwarranted benefit; nor does the fact that Fischer and Smith combined their efforts to give false information to Iowa make a valid contract of insurance between Smith and Iowa.

In Simons v. Brashears Transfer and Storage, Okl., 344 P.2d 1107, we held that in a case of legal cognizance tried to the court without a jury, and there is any competent evidence in the record reasonably tending to support the findings and judgment, the judgment will not be reversed on the grounds that the judgment is contrary to the evidence or because of alleged insufficiency of the evidence. However, if there is no competent evidence reasonably tending to support the findings and judgment, this Court on appeal will reverse the judgment.

In Glove & Rutgers Fire Ins. Co. v. Roysden, 208 Okl. 660, 258 P.2d 644, we held:

"A soliciting agent of insurer is insurer's agent in taking applications, with power and authority as to such applications, and acts performed or knowledge received and acted upon by him in connection with application are binding on insurer, in absence of fraud or collusion between agent and applicant."

In Hartford Fire Insurance Company v. Martin, Okl., 381 P.2d 877, we said that it is an established rule in this jurisdiction that where the agent of an insurance company is given authority to take applications for the company's policies, knowledge of material facts, acquired by him in doing so, is imputed to the company.

There is no evidence of fraud or collusion between Smith and Iowa's agent, Fischer; no evidence that Smith misled Fischer or failed to furnish candid answers in the negotiations; and no evidence that the rate problem was important to Smith or discussed, or that Iowa would not have insured the pick-up for commercial purposes.

Fischer filled in the application and signed the same and Smith never saw it. Fischer had a general knowledge of the nature of the use of the pick-up and could have inserted the commercial rate or stated in the application that it was used for some commercial purposes. The retail credit report, which was obtained by Iowa was also

relied upon by Iowa in accepting the risk. Where it obtained the information to base its credit report is not shown.

■■ Since Iowa's policy of insurance was in force and effect when the accident occurred, the burden was upon Iowa to prove that the policy was not binding on it. We are unable to find any misrepresentations made by Smith which would invalidate the policy. Fischer had actual notice that Smith's use of the pick-up was not confined to family use, but that the same was also used for commercial purposes, although the use for commercial purposes may have been somewhat limited. Under these circumstances the agent is charged with having constructive notice of the uses of the pick-up because upon further inquiry he could have ascertained such fact. See Title 25 O.S.1961, § 13; and Chicago, R. I. & R. Ry. Co. v. Gray, 65 Okl. 181, 165 P. 157.

■ We can only conclude that there is no competent evidence reasonably tending to support the inherent finding and judgment of the trial court that Smith made material misrepresentations in securing the policy of insurance. We therefore hold that Iowa's policy of insurance in favor of Smith was binding on Iowa.

## PROPOSITION II

On the date of the accident, Smith's policy of insurance was in force and effect and we have heretofore determined that the same was binding on Iowa. The policy contained a provision which extended coverage to any person operating the pick-up with Smith's permission and to any firm legally responsible for the use of said vehicle. Calvery, the driver of the pick-up when the same was involved in the accident, and OTASCO, purportedly became "insureds" under the policy by virtue of this extended coverage provision.

Subsequent to the accident, and without the consent of Calvery and OTASCO, Smith and Iowa mutually rescinded the policy of insurance which was in force and effect when the accident occurred. Iowa argues that such rescission was binding upon all the parties claiming an interest through the policyholder (Smith), and states: "Ronald Gene Calvery and Oklahoma Tire & Supply Company had no contractual rights under this policy—contract between Harold Smith and defendant, (Iowa), excepting only as they did or did not come into privity with the said Harold Smith by reason of his granting permission to operate or use the vehicle in question. No language of the policy was intended to protect them from the decision of Smith and the defendant to rescind the contract, even after loss."

■ The facts herein present the following issue to be resolved: "Where an insurance company issues an effective and binding public liability insurance policy to a named insured covering a motor vehicle owned by the named insured and such policy contains a provision that any person using such vehicle with the permission of the named insured shall be "insured"; if an individual is involved in an accident while operating the vehicle with the permission of the named insured, may such individual's rights under the policy be abrogated by a subsequent rescission of the policy by the insurance company and the named insured, without the consent of the individual who became an "insured" under the policy?"

In determining the above issue, it should be pointed out that we are herein concerned only with the rights of an individual who was operating the vehicle with the named insured's consent and not with the rights of a third person who may have suffered damages by virtue of such operation.

In 5 Am.Jur., Automobiles, Sec. 532, page 804, we find this language:

"Independently of the general insuring clause in an automobile liability policy, oftentimes there appears, either within the policy or by way of rider or indorsement attached thereto, a clause purporting, or the effect of which is, to extend the protection of the policy to any person or persons coming within a

defined group. This is the so-called 'omnibus' clause. Sometimes, though not nearly so often, the general insuring clause itself is so framed as to grant this type of coverage, that is, to create liability insurance in favor not only of the named assured, but also of any person or persons coming within a defined group. Policies with such clauses have been held valid."

In 5 Am.Jur., Automobiles, Sec. 533, and 534, the nature and effect of the provisions above referred to are discussed and it is clear such provisions create liability insurance in favor of an individual or firm who fall within the defined group, in addition to the named insured.

In 29 Am.Jur., Insurance, Sec. 500, page 820, it is stated: "An 'omnibus' coverage clause in a liability policy covers a group of persons who may or may not have an insurable interest at the time the policy is written; if a person is within the defined group, it is sufficient that at the time of the accident such person is in a position to become legally liable for injury to others."

See also 72 A.L.R. 1376.

We can only conclude that the effect of the extended coverage provision in Iowa's policy with Smith conferred a valuable right to any person who was driving Smith's pick-up with his permission (Calvery), and to any firm legally responsible for the use of the vehicle (OTASCO). Under the facts herein presented, Calvery and OTASCO, were within a defined insured group within the terms of the policy and became "insureds" under the extended coverage provision of the policy. If the extended coverage provision did not have this effect and did not make Calvery and OTASCO "insureds" under the policy, such provision which purports to safeguard other persons than the specifically named insured, becomes inoperative.

Since Calvery and OTASCO became "insureds" under the terms of the policy and their rights accrued thereunder prior to the time of the mutual rescission of the policy by Iowa and Smith, Iowa and Smith could not abrogate the rights of Calvery and OTASCO without their consent. Therefore, the mutual rescission of the insurance policy by Iowa and Smith did not abrogate the accrued rights of Calvery and OTASCO and such mutual rescission was ineffective as to them. Since such rescission did not abrogate Calvery and OTASCO's rights, Iowa's policy as to them remained in force and effect and Iowa was legally obligated under the terms of its insurance policy with Smith for coverage to Calvery and OTASCO. By this finding and by virtue of the stipulations of the parties, the judgment should have been for Lumbermens.

Judgment reversed with directions to enter judgment for Lumbermens.

JACKSON, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, BERRY and HODGES, JJ., concur.