872 P.2d 1233

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff/Counter–Defendant/Appellant,

v.

Betty FALNESS, Personal Representative of the Estate of Anna Hugg and the Estate of John Hugg, Defendant/Counter–Claimant/Appellee.

No. CV–92–0393–CQ.

Supreme Court of Arizona.

April 28, 1994.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Ralph E. Hunsaker and Christopher Robbins, Phoenix, for plaintiff/appellant.

Law Offices of Jim Robert Junker by Jim Robert Junker, Scottsdale, for defendant/appellee.

OPINION

ZLAKET, Justice.

John Hugg and his wife Anna were killed when their family automobile collided with another car in August 1989. Mr. Hugg was driving, and it is undisputed that his negligence contributed to the collision. The other driver, who had no insurance, was also negligent. The Huggs were insured by State Farm. Their policy included liability and uninsured motorist coverages.

Betty Falness, on behalf of Mrs. Hugg's estate, made a claim against the insurer for the applicable policy limits under both coverages. State Farm paid the full uninsured motorist limits based on the other driver's conduct. It denied the liability claim arising out of Mr. Hugg's negligence, however, because the policy contained the following "named insured" exclusion:

When Coverage A [liability] Does Not Apply

THERE IS NO COVERAGE:

. . . .

2. FOR ANY BODILY INJURY TO:

. . . .

c. YOU.

The policy defined "you" as "the named insured or named insureds shown on the declarations page." Both Mr. and Mrs. Hugg were designated as "named insureds."

State Farm brought a declaratory judgment action in federal district court to re-

solve the liability coverage issue. Falness counterclaimed, and the parties filed cross-motions for summary judgment. The court granted judgment in favor of Falness. State Farm appealed to the United States Court of Appeals for the Ninth Circuit, which then presented us with a certified question that we have divided and reformulated as follows:

1) Whether the named insured exclusion is facially invalid under *Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co.*, 140 Ariz. 383, 682 P.2d 388 (1984) and its progeny; and,

2) Whether the doctrine of reasonable expectations applies to the named insured exclusion, and if so, under what circumstances.

We have jurisdiction pursuant to Rule 27, Ariz.R.Sup.Ct., A.R.S. § 12–1861 and Ariz. Const. art. 6, § 5(6).

## I. *The Named Insured Exclusion*

 This court held in *New York Underwriters Ins. Co. v. Superior Court*, 104 Ariz. 544, 545, 456 P.2d 914, 915 (1969) that the exclusion "as limited to the named insured himself is not contradictory to the provisions of A.R.S. § 28–1170, and it is not illegal or void." Thus, it is not invalid on its face. We hasten to add, however, that neither is it automatically enforceable. *New York Underwriters,* and its offspring, should only be read to mean that nothing in the statute or the public policy of this state "is intended to restrict the privilege of an individual to contract with his insurance carrier to exclude his own personal recovery under the policy terms in the event of his own injury." 104 Ariz. at 545, 456 P.2d at 915. Whether an insured has actually done so depends on the facts and circumstances of a given case.

Nor is the exclusion facially invalid under *Darner* because, as we said there,

We have adopted a rule of law which, *in proper circumstances,* will relieve the insured from certain clauses of an agreement which he did not negotiate, probably did not read, and probably would not have understood had he read them.

140 Ariz. at 394, 682 P.2d at 399 (emphasis added). In *Darner,* we were critical of certain fictions relied on by the court in *New York Underwriters. See Darner,* 140 Ariz. at 388 n. 6, 682 P.2d at 393 n. 6. We did not, however, overrule the latter's pronouncements regarding the legal ability of parties to agree upon a named insured exclusion. Rather, we concluded that under appropriate circumstances courts must look beyond the boilerplate provisions of standardized insurance policies in determining the contractual rights and obligations of the parties.

## II. *Reasonable Expectations*

 Thus, we reach that part of the inquiry dealing with the effect of an insured's "reasonable expectations" upon such an exclusion. *See Gordinier v. Aetna Cas. & Sur. Co.*, 154 Ariz. 266, 742 P.2d 277 (1987); *Darner,* 140 Ariz. 383, 682 P.2d 388 (1984); Restatement (Second) of Contracts § 211 cmt. f (1981). The short answer, but the only one we can give in view of the limited facts furnished to us, is that under some circumstances the rule of reasonable expectations may render a named insured exclusion unenforceable on the same basis and for reasons similar to those recently set forth in *Averett v. Farmers Ins. Co.*, 177 Ariz. 531, 869 P.2d 505 (1994) (examining the relationship between the rule of reasonable expectations and the household exclusion). The inquiry is generally fact specific. An analysis of the format and clarity of the policy, as well as the circumstances surrounding its acquisition and issuance, is required to determine whether the exclusion falls outside the reasonable expectations of the insureds.

> [S]uch a limitation must be *intended and agreed to,* not merely imposed upon an unwitting customer. When an exclusion, limitation or escape clause runs contrary to what a reasonable insured would expect, or when it significantly diminishes coverage that the policy purports on its face to provide, the surrounding facts and circumstances must be considered to determine whether, and to what extent, there was a meeting of the minds between the contracting parties.

*Id.* at 534, 869 P.2d at 508.

We cannot make this determination on the record before us, nor do we intend our opin-

ion to be read as a prediction of the outcome of this case. We merely state the law of this jurisdiction for purposes of application by the federal court.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and MARTONE, JJ., concur.