2001 OK 15

Glinda HARTLINE, Plaintiff–Garnishor–Appellee,

v.

James HARTLINE, Defendant,

v.

Mid–Century Insurance Company, Defendant–Garnishee–Appellant.

No. 87046.

Supreme Court of Oklahoma.

Feb. 13, 2001.

Joe Farnan, Law Office of Joe Farnan, Purcell, Oklahoma, for Appellee.

Paul B. Middleton, Dobbs, Schroeder & Middleton, Oklahoma City, Oklahoma, for Appellant.

OPALA, J.

¶ 1 The dispositive question tendered on certiorari is whether an automobile liability policy exclusion, which operates to deny *all* coverage to a named insured who is injured while riding as a passenger in the insured vehicle, violates the legislative policy underlying Oklahoma's compulsory insurance law. We answer in the affirmative, but only insofar as the injured person is left *sans* the minimum mandated coverage.

## ANATOMY OF LITIGATION

¶ 2 On 22 September 1993 Glinda Hartline ("Glinda"), a passenger in a 1975 Ford driven by her husband, James Hartline ("James"), sustained bodily injuries in an automobile accident caused by the latter's negligence. Glinda brought an action for damages against James. The trial court entered judgment for Glinda in the amount of $7,000 to be satisfied solely from the proceeds of a liability insurance policy issued by Mid–Century Insurance Company ("Mid–Century"). The policy provided coverage in the minimum amount required by Oklahoma's compulsory insurance law.[1] At the time of the accident, Glinda and James were married to each other and residing in the same household.

¶ 3 The insurance policy in question was issued on 20 September 1993. Glinda, who was not present when James applied for the policy, did not sign the application form. *James alone rejected uninsured motorist coverage.* Although the declarations page of the policy lists both James and Glinda as named insureds and billing statements were subsequently sent in both their names, *the insurer's internal data sheet identifies James alone as the named insured.* Title to the 1975 Ford (and its registration) was in James's name. Neither the title to, nor the registration of, any other motor vehicle stood in Glinda's name.

¶ 4 Glinda brought a postjudgment garnishment proceeding against Mid–Century, which denied liability. The insurer then moved for summary judgment. Citing as controlling authority this court's pronouncement in *Looney v. Farmers Insurance Group*,[2] the insurer argued that Glinda, as a named insured under the policy, was validly excluded from liability coverage. In response, Glinda argued that *Looney* no longer controlled the validity of the exclusion in question. Instead, she urged that the insurance proceeds were available to her because our more recent decision in *Nation v. State Farm Insurance Company*[3] had invalidated the policy exclusion relied on by Mid–Century. While awaiting a ruling on the summary judgment motion, the parties prepared a stipulation of facts and submitted the case for a bench trial. Judgment was entered for Glinda; Mid–Century appealed. The Court of Civil Appeals, Div. IV, (COCA) reversed. Agreeing with Mid–Century that *Looney* was the controlling authority, COCA held that Mid–Century's *policy exclusion for bodily injury to an insured was valid* and relieved the insurer of liability for Glinda's injuries. Having granted Glinda's certiorari petition, we now vacate COCA's opinion and affirm the nisi prius judgment.

## II

### STANDARD OF REVIEW

¶ 5 The facts in this cause are undisputed, having been submitted to the trial court by stipulation. The issue before us is one of law in which we must determine the validity of an exclusion contained in a policy of automobile liability insurance. Review of contested issues of law is governed by a *de novo* standard. In its reexamination of a trial court's legal rulings an appellate court exercises plenary, independent and nondeferential authority.[4]

## III

### THE "INSURED PERSON" EXCLUSION IN MID–CENTURY'S POLICY

¶ 6 The Mid–Century policy here under review provides in pertinent part:

---

1. Oklahoma's compulsory insurance law, 47 O.S. 1991 and Supp.1993 §§ 7–600 et seq., is codified in Article VI of the Financial Responsibility Act. The latter enactment is found in Chapter 7 of the Highway Safety Code. See 47 O.S.1991 and Supp.1993 §§ 7–101 et seq.

2. 1980 OK 111, 616 P.2d 1138.

3. 1994 OK 54, 880 P.2d 877.

4. *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1083 ("Issues of law are reviewable by a de novo standard and an appellate court claims for itself plenary independent and non-deferential authority to re-examine a trial court's legal rulings."); *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

PART I—LIABILITY

Coverage A—Bodily Injury

Coverage B—Property Damage

We will pay **damages** for which any **insured person** is legally liable because of **bodily injury** to any person and **property damage** arising out of the ownership, maintenance or use of a **private passenger car**, a **utility car**, or a **utility trailer**. (emphasis in original denoting defined terms)

\* \* \* \* \* \*

Exclusions

This coverage does not apply to:

\* \* \* \* \* \*

11.a. Liability for **bodily injury** to an **insured person.** (emphasis in original denoting defined terms)

¶ 7 The policy defines an insured person—for purposes of both the liability coverage and exclusionary clause provisions—as (1) the named insured listed on the declarations page, (2) that person's spouse if a resident of the same household, and (3) relatives of either residing in the same household.[5]

¶ 8 Mid–Century argues the quoted policy exclusion relieves it of liability to Glinda. This is so because she falls within the excluded class as a named insured on the declarations page of the policy. The insurer contends that this court's pronouncement in *Looney,* which affirmed the validity of an exclusionary provision barring recovery by a named insured, compels today a decision in its favor. Glinda, on the other hand, contends that *Looney* is no longer the controlling authority on the validity of named insured/household exclusionary clauses, having been supplanted by this court's more recent pronouncement in *Nation.* The latter decision, she urges, teaches that named insured/household exclusionary clauses are void as contrary to the public policy that underlies compulsory liability insurance.

## IV

### NEITHER *LOONEY* NOR *NATION* ADEQUATELY ADDRESSES THE OVERBROAD EXCLUSION CLAUSE IN MID–CENTURY'S POLICY

¶ 9 In *Looney* we were presented with facts quite similar to those in the case at hand. Nita Looney was injured while riding as a passenger in a car owned and driven by her husband, with whom she was then living. The accident was Mr. Looney's fault, and Mrs. Looney obtained a judgment against him. She then brought a postjudgment garnishment proceeding against the vehicle's insurer, Farmers Insurance Group (Farmers), which denied liability based upon a policy exclusion for bodily injury to (1) any member of the insured's household except a servant, or (2) the named insured. The policy defined a named insured as the insured named on the policy's declarations page and that individual's spouse if a resident of the same household. Mrs. Looney was arguably excludable both as a named insured and as a member of the insured's household.

¶ 10 Mrs. Looney argued that Farmers' exclusionary provision was unenforceable because it violated the public policy of the state expressed in Oklahoma's Financial Responsibility Act (the Act).[6]

Considering for the first time the requirements of the then newly enacted Article VI of the Act, which mandated liability insurance,[7] the court held that its provisions were

---

5. The policy's definition of an insured person encompasses additional individuals and entities not pertinent here.

6. Oklahoma's Financial Responsibility Act imposes financial responsibility requirements on owners and operators of motor vehicles. Article II (47 O.S.1991 and Supp.1993 §§ 7–201 et seq.) and Article III (47 O.S.1991 and Supp.1993 §§ 7–301 et seq.), originally enacted in 1961, contain requirements for proof of financial responsibility *after* an accident has occurred. *See*

Laws 1961, ch. 10b, p. 353, §§ 7–201 et seq. and p. 358, §§ 7–301 et seq., eff. Sept. 1, 1961. In 1976 the legislature enacted Article VI, entitled Compulsory Automobile Liability Insurance, which requires automobile owners and operators to purchase and maintain security for the payment of damages *before* the occurrence of an accident. *See* Laws 1976, Ch. 176, p. 248, eff. December 11, 1976.

7. *See, supra,* note 6.

silent on the matter of policy exclusions.[8] Instead, the opinion turned to § 7–324(e),[9] a provision found in Article III of the Act, and treated it as determinative of an exclusion's validity for an Article VI-mandated policy.[10] After examining that provision in detail,[11] the court concluded that it did not prevent Farmers from excluding Mrs. Looney who, it was noted, was a named insured under the policy and not just a member of Mr. Looney's household.[12]

¶ 11 Despite the factual similarities between *Looney* and the instant litigation, *we decline to rest today's decision on the earlier case.* There are times when it becomes necessary to reassess our commitment to the binding force of a prior holding.[13] This is such a time. Since its enactment in 1976, the compulsory insurance law has undergone numerous amendments and enhancements.[14]

8. *Looney v. Farmers Insurance Group*, 1980 OK 111, ¶ 16, 616 P.2d 1138, 1141.

9. The provisions of 47 O.S.1971 § 7–324(e) set forth the statutory requirements for a "motor vehicle liability policy." With respect to permissible exclusions, that section states:
   "Such motor vehicle liability policy need not insure any liability under any workmen's compensation law nor any liability on account of bodily injury to or death of an employee of the insured while engaged in the employment, other than domestic, of the insured, or while engaged in the operation, maintenance or repair of any such vehicle nor any liability for damage to property owned by, rented to, in charge of or transported by the insured."
   A motor vehicle liability policy is defined as a policy of liability insurance "certified as provided in section 7–321 or section 7–322 as proof of financial responsibility for the future, . . . ." *See* 47 O.S.1971 § 7–324(a).

10. *Looney*, *supra*, note 8 at ¶ 16, at 1141.

11. The court's analysis of § 7–324(e) began with an examination of its predecessor, 47 O.S.1951 § 521(e), which provided:
   "Such motor vehicle liability policy need not insure any liability under any Workmen's Compensation Law nor any liability *on account of bodily injury to or death of a guest passenger or member of the family of the insured residing in the same household,* other than domestic, of the insured, or while engaged in the operation, maintenance or repair of any such motor vehicle nor any liability for damage to property owned by, rented to, in charge of or transported by the insured." (emphasis added).
   This provision was repealed in 1961. *See* Laws 1961, p. 424, § 20–106, eff. Sept. 1, 1961. It was then reenacted and recodified as 47 O.S. 1961 § 7–324(e). *See* Laws 1961, p. 361, § 7–324, eff. Sept. 1, 1961. For the text of 47 O.S. 1961 § 7–324(e), *see supra*, note 9. The recodified provision omitted the language of § 521(e) that had authorized the exclusion of guest passengers and family members.

12. *Looney*, *supra*, note 8 at ¶ 12, at 1141. Looney is unfortunately not without ambiguity. This has led some to conclude that it upheld the household exclusion as well as the named insured exclusion. In large measure the source of

the problem is in the court's expression of agreement with the holding of the Tenth Circuit Court of Appeals in *Farmers Ins. Co. v. McClain*, 603 F.2d 821 (10th Cir.1979), a declaratory judgment action by an insurer to determine its obligations under Oklahoma law with respect to a policy of automobile insurance. The insurer argued that the household exclusion clause of its policy relieved it of any obligation to defend or indemnify its insured. Without considering the effect of Oklahoma's Compulsory Insurance Law on the validity of policy exclusions, the federal appellate court agreed with the insurer. *Id.* at 823. It is unclear from *McClain* whether no mention was made of the Compulsory Insurance Law because it had not been invoked by the parties or rather because the accident occurred prior to the enactment of that law. Inasmuch as the court held in *Looney* that the Compulsory Insurance Law had no bearing on policy exclusions, *Looney* had no problem professing its approval of *McClain*. Still, *Looney's* approval of *McClain* is confusing because the court treated the named insured and household exclusions as interchangeable, thereby obfuscating which one really served as the basis for the *Looney* holding. *See, e.g., State Farm Mutual Ins. Co. v. Schwartz*, 933 F.2d 848, 851 (10th Cir.1991) (treating *Looney's* discussion of *McClain* and the household exclusion as dictum).

13. When reassessing our commitment to a prior holding as binding precedent, we are mindful of the following factors that are to be considered: (1) whether the rule has proved to be intolerable by defying practical workability, (2) whether the rule is subject to the sort of reliance that would add special hardship to the consequences of overruling and inequity to the cost of repudiation, (3) whether related principles of law have developed so far that the old rule remains no more than a remnant of abandoned doctrine and (4) whether facts have so changed or come to be viewed differently that the old rule has been robbed of significant application or justification. *Rodgers v. Higgins*, 1993 OK 45, ¶ 29, 871 P.2d 398, 412; *Planned Parenthood v. Casey*, 505 U.S. 833, 854–855, 112 S.Ct. 2791, 2808–2809, 120 L.Ed.2d 674 (1992).

14. Since *Looney* was decided the Legislature has made considerable changes in the compulsory automobile insurance law. The original version

This metamorphosis, together with the judiciary's gradual unfolding of the public policy that underlies the law's enactment,[15] has largely robbed *Looney* of its rationale and justification. Moreover, in *Young v. Mid–Continent Casualty Company*,[16] this court expressly disapproved of *Looney's* reliance on an Article III provision to determine the validity of an exclusion in an Article VI-mandated insurance policy.[17] Because (a) the court has departed from the reasoning on which *Looney* was based, and (b) the compulsory liability insurance law has since its *Looney*-era infancy stage developed into a more comprehensive regime of law-mandated insurance coverage, the rule in *Looney* can no longer be regarded as a complete expression of Oklahoma law's current stance toward permissible exclusions from mandatory liability insurance coverage. In short, *Looney* is to be treated as *overruled.*

¶ 12 We also reject Glinda's contention that *Nation v. State Farm Insurance Company*[18] controls the issue before us. The policy under review in that case provided no coverage for bodily injuries to an insured or any resident family member of an insured. It defined an insured to include resident relatives of the named insured or of the named insured's spouse. The person whose exclusion was sought by the insurer was the insured's five-year old son, who fell within the exclusion *both as an insured and as a resident family member of an insured.* We held the exclusionary clause unenforceable "insofar as it attempts to defeat the legislature's mandate of a minimum amount of liability insurance coverage available for persons *in the position of the deceased passenger here.*" (emphasis added)[19] This indeterminate language did no more than invalidate the exclusionary clause there in contest without providing any gauge for determining invalidity in future cases. *Nation* does not support Glinda's expansive view of public policy that would favor broad exclusion invalidation flowing from our compulsory insurance law.

¶ 13 In sum, neither *Looney* nor *Nation* adequately addresses overbroad exclusion clauses in automobile policies that adversely affect the "named insured" or "members of the household." We welcome the opportunity

was a rudimentary formulation of what has since become, through repeated amendment and judicial construction, a comprehensive scheme of compulsory liability insurance. For example, the 1976 version of the law imposed the requirement to maintain insurance on owners of motor vehicles registered in this state only and required that the owner who was registering his/her vehicle merely certify that such insurance existed. The requirement of coverage was extended in later versions to non-owner operators and to certain non-resident owners and operators. As of September 1, 1993, the law mandates coverage for all motor vehicles operated in this state. Proof that such insurance exists must be provided; mere representation to that effect is now insufficient.

15. The court has recognized the comprehensive nature of the compulsory liability insurance law. *See Beavin v. State ex rel. Dep't. of Public Safety*, 1983 OK 34, ¶ 12, 662 P.2d 299, 302 ("From the language of §§ 7–601, the Legislature has clearly established a comprehensive compulsory liability insurance law. There can be no doubt that the legislative intent was to provide that no motor vehicle shall be operated on the highways of Oklahoma unless the vehicle is insured or 'secured.' "). *See also Young v. Mid–Continent Cas. Co.*, 1987 OK 88, ¶ 13, 743 P.2d 1084, 1087 ("Other states, in examining their compulsory liability insurance legislation have come to the conclusion that such legislation embodies a public policy that innocent victims of the negligent operation of motor vehicles should be compensated for their injuries. [footnote omitted] The perspective which this public policy adopts is that of the innocent victim rather than that of the insurer or the insured tort-feasor. [footnote omitted] Such a construction would appear to be consistent with the intent previously deduced by this Court from the plain language of section 7–601, which focuses on insuring the availability of security to cover losses sustained by any person arising out of the ownership, maintenance, operation or use of a vehicle registered in the State of Oklahoma.").

16. 1987 OK 88, 743 P.2d 1084.

17. *Id.* ¶ 11, at 1087. *This disapproval had been foreshadowed in earlier cases* in which we noted that the provisions of the different articles contained in the Financial Responsibility Act, while related, are not necessarily overlapping or applicable *inter se.* *Equity Mutual Ins. Co. v. Spring Valley Wholesale Nursery, Inc.*, 1987 OK 121, n. 7, 747 P.2d 947, 951 n. 7; *Beavin v. State ex rel. Dep't. of Public Safety*, 1983 OK 34, 662 P.2d 299.

18. 1994 OK 54, 880 P.2d 877.

19. *Id.* ¶ 8, at 878.

presented here—where the named-insured and household exclusions are merged into a single "insured exclusion" clause—to pronounce a standard for distinguishing between permissible and impermissible exclusions in liability policies issued in compliance with Oklahoma's compulsory insurance law.

## V

## THE COMPULSORY INSURANCE LAW

¶ 14 The provisions of 47 O.S. Supp. 1993 § 601(C)(1) prohibit the operation of any motor vehicle in this state unless it is insured or secured "for the payment of *loss resulting from the liability imposed by law* for bodily injury, death and property damage *sustained by any person* arising out of the ownership, maintenance, operation or use of the vehicle." (emphasis added)[20]

¶ 15 As originally enacted the compulsory insurance law did not make any reference to exclusionary provisions.[21] That state underwent a change when in 1982 the law was amended to authorize the inclusion, in a policy's omnibus clause,[22] of "exclusions in accordance with existing law".[23] At the same time the legislature added another provision that implicitly sanctions the exclusion of a named individual as an insured driver.[24] Without deciding whether by its 1982 amendments the legislature intended merely to authorize exclusions from the omnibus clause and of named individuals as insured drivers and no others, it is fair to say that the compulsory insurance law does not *plainly and unambiguously* sanction or prohibit other types of exclusions. The statute's references to exclusions do not explicitly address the validity of an exclusion based on the kinship of the harmed individual to an otherwise insured tortfeasor whose utilization of the insured vehicle at the time of the accident is one that stands covered by the policy.

¶ 16 Even in the absence of a violation of a law's express provision, an exclusion may nonetheless be invalid for nonconformity to the *policy of the law*. The principal purpose of law-mandated liability insurance is the protection of the public from the financial hardship which may result from the use of automobiles by financially irresponsible persons.[25] To effectuate this policy, *any vehicle*

20. The provisions of 47 O.S. Supp.1993 § 601(C)(1) state:

"On and after September 1, 1993, unless otherwise provided by law, no motor vehicle shall be operated in this state, unless there is in effect with respect to such vehicle security for the payment of loss resulting from the liability imposed by law for bodily injury, death and property damage sustained by any person arising out of the ownership, maintenance, operation or use of the vehicle. Every person, while operating or using a motor vehicle in this state which is not owned by such person, shall maintain in force security for the payment of loss resulting from the liability imposed by law for bodily injury, death or property damage sustained by any person arising out of the operation or use of the vehicle, unless such security has been provided by the owner in accordance with this section which does not exclude said person from coverage."

21. 47 O.S. Supp.1976 § 7–600 et seq.

22. An omnibus clause in a policy of automobile insurance extends coverage to persons who use the owner's vehicle with the permission of the named insured. *Lumbermens Mut. Cas. Co. v. Iowa Home Mut. Cas. Co.*, 1965 OK 87, ¶ 26, 405 P.2d 160, 165.

23. See Laws 1982, c. 355, § 1, operative Jan. 1, 1983, codified at 47 O.S. Supp.1982 § 7–600(b)

and (c). Those provisions state that an owner's policy:

"b. shall insure the person insured therein and insure any other person, *except as provided in subparagraph c of this paragraph*, using an insured vehicle with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, operation or use of such vehicle. (emphasis added)
c. may provide for exclusions from coverage in accordance with existing laws; ..."

24. *See* Laws 1982, c. 355, § 4, operative July 1, 1982. The pertinent portion of 47 O.S. Supp. 1982 § 7–601(B) states:

"Every person, while operating or using a motor vehicle registered in this state which is not owned by such person, shall maintain in force security for the payment of loss ..., unless such security has been provided by the owner in accordance with this section *which does not exclude said person from coverage*." (emphasis added)

25. *Thomas v. Nat'l Auto. and Cas. Ins. Co.*, 1994 OK 52, ¶ 10, 875 P.2d 424, 427.

*operating on the roads of this state* must be secured against liability to innocent victims in the event harm occurs from its negligent operation.[26] This clearly articulated public policy overrides contrary private agreements that restrict coverage where the contractual strictures do not comport with the purpose of the Act.[27]

¶ 17 Extant jurisprudence consistently holds that insurance policy clauses which operate to deny coverage to the general public are void as contrary to statutorily articulated public policy.[28] Hence, clauses which would exclude from coverage all potential claimants have been uniformly invalidated.[29] Yet the same jurisprudence also teaches that the legislative intent in enacting compulsory liability insurance was not "to eliminate all possible bargaining regarding liability exclusions which may be contained in the required liability insurance policies."[30]

¶ 18 Family exclusions potentially affect a sizable portion of Oklahoma's population. Almost everyone may plausibly be placed within the excluded class under some relative's policy. *Unrestricted* application of family exclusions means that seriously injured accident victims will be left with no secured source of compensation for their injuries.

¶ 19 Our sister states generally have *either completely validated or completely invalidated named insured and household exclusionary clauses.*[31] We view this approach as undesirable because it needlessly limits the contractual flexibility of both parties. It is possible to fashion a standard which retains an appropriate element of bargained-for coverage (or exclusion) of family members without sanctioning the exclusion of an overly broad class of persons exposed to potential harm.

■ ¶ 20 The solution lies in the interaction of liability insurance and uninsured mo-

**26.** *Young v. Mid–Continent Casualty Co.,* 1987 OK 88, ¶ 16, 743 P.2d 1084, 1088. Extant jurisprudence refers to the persons protected by the compulsory insurance law as "the public" or as "innocent victims". The pertinent statutory text, codified at 47 O.S. Supp.1993 § 7–601(C)(1), does not contain either term. *See* text of § 7–601(C)(1), *supra,* note 20. · Rather, it uses the phrase "any person" to describe those for whose protection security must be provided. In *Looney, supra,* note 8, the injured spouse argued that the words "any person" were clear and meant what they plainly said, thereby barring her exclusion. The court disagreed, declining to focus on those two words to find statutory authorization for Mrs. Looney's recovery. The court believed that to do so would misconstrue the intent of the compulsory insurance law and ignore the language in Article III that authorizes exclusions. Glinda has not invited us to revisit *Looney's* rejection of the statutory text's plain language. Because in this case we can give relief without considering the legislature's intent in using the words "any person", we save for another day the task of revisiting that aspect of the enactment.

**27.** *Thomas, supra,* note 25 at ¶ 10, at 427; *Nation v. State Farm Ins. Co.,* 1994 OK 54, ¶ 15, 880 P.2d 877, 886 (Opala, J. concurring).

**28.** *Thomas, supra,* note 25 at ¶ 11, at 427.

**29.** *Thomas, supra,* note 25 at ¶ 11, at 428; *Nation, supra,* note 27 at ¶ 16, at 886 (Opala, J. concurring). Cf. *State Farm Auto. Ins. Co. v. Greer,* 1989 OK 110, ¶ 7, 777 P.2d 941, 943.

**30.** *Young v. Mid–Continent Casualty Co., supra,* note 26 at ¶ 16, at 1088. The law's mandate of

protection for the public is not violated when an insurer invokes its statutory right to exclude liability for the risk associated with a named driver. *Pierce v. Oklahoma Property and Cas. Ins. Co.,* 1995 OK 78, 901 P.2d 819.

**31.** *See, e.g., Farmers Ins. Group v. Reed,* 109 Idaho 849, 712 P.2d 550, 553–554 (1985) (the household exclusion violates the express language of the compulsory insurance law, which requires security against loss resulting from liability imposed by law for injury sustained by any person, is void as contrary to public policy, and creates inequities in its application); *Transamerica Ins. Co. v. Royle,* 202 Mont. 173, 656 P.2d 820, 824 (1983) (household exclusion violates express language of compulsory insurance law, which requires security against loss resulting from liability imposed by law for injury sustained by any person); *Allstate Ins. Co. v. Wyoming Ins. Dep't.,* 672 P.2d 810 (Wyo.1983) (holding the household exclusion void); *Farmers Ins. Exch. v. Dotson,* 913 P.2d 27 (Colo.1996) (named insured exclusion void as contrary to public policy); *Farmers Ins. Exch. v. Cocking,* 29 Cal.3d 383, 173 Cal.Rptr. 846, 628 P.2d 1 (1981) (exclusion of insured, expressly sanctioned by state statute, cannot be struck down); *State Farm Mut. Auto. Ins. Co. v. Falness,* 178 Ariz. 281, 872 P.2d 1233 (1994) (named insured's exclusion not invalid on its face, but not automatically enforceable); *Transamerica Ins. Co. v. Henry,* 563 N.E.2d 1265 (Ind.1990) (household exclusion clause not contrary to public policy of Indiana).

torist coverage, the two components of an increasingly integrated system of automobile insurance.[32] **We hold that the household and named insured/insured exclusions are invalid** *only when they operate to deny all coverage* **to an injured resident family member.** It is the insurer's responsibility to assess whether its policy's exclusionary provision will have this effect. Compliance with this pronouncement imposes on the insurer the duty to provide in its policy for at least the minimum mandated coverage. This may be in the form of either liability or uninsured motorist coverage. In short, when an applicant rejects uninsured motorist coverage [33] in a policy which excludes resident family members from liability coverage, the insurer must inform itself by appropriate inquiry whether those who would fall into that policy's excluded class are covered by their own uninsured motorist coverage or by some other indemnity. Those persons who do not own a car will rarely, if ever, have purchased their own uninsured motorist coverage, but one's car ownership alone is no guarantee that there is the requisite coverage. Absent some explicit provision in the policy which affords them the minimum protection, wrongly excluded persons—persons not secured by uninsured motorist coverage—will be deemed insured to the very limit of the insured's liability protection.[34]

■ ¶ 21 In order to afford insurers ample notice and opportunity to recast liability exclusions or afford UM offers to those who may be impermissibly excluded, the full impact of the new rule which places limits upon the enforceability of exclusions from coverage shall be applied only to those claims which arise after twelve months from the date mandate is issued in this cause. As for this lawsuit and for all litigable claims that have or will have arisen *before* the date of mandate herein, as well as for those which shall arise during the twelve-month period immediately following the mandate's issuance, improperly excluded spouses and resident family members shall be deemed covered solely to the extent of the statutorily-mandated minimum amount—$10,000 for each person and $20,000 for each accident.[35]

## VI

## SUMMARY

¶ 22 Oklahoma jurisprudence teaches that clauses in insurance policies which leave an innocent third-party victim of the insured's negligence *without any insurance* protection are void as contrary to statutorily articulated public policy. James rejected in the instant case uninsured motorist coverage on behalf of himself and Glinda, and Glinda did not own another insured vehicle which could have provided her with uninsured motorist coverage. Because the exclusion in Mid–Century's policy operated to deny Glinda *all* coverage, it is unenforceable as void for

**32.** *See* 8 COUCH ON INSURANCE, § 109:5 at 109–13.

**33.** Pursuant to the provisions of 36 O.S.1991 § 3636(G), an applicant for automobile liability insurance may reject the insurer's statutorily mandated offer of uninsured motorist protection and that rejection "... shall be valid for all insureds under the policy...."

**34.** The author of the statement concurring in judgment mischaracterizes today's opinion as an exercise in judicial legislation. He would instead find in public policy a complete prohibition on bargained-for coverage (or exclusion) of resident family members. We reject this solution as overbroad and commend today's pronouncement as both (a) narrowly tailored to resolve the case before us and (b) compatible with the exercise of adjudicative function. The legislative scheme of automobile insurance includes both liability and uninsured motorist coverage. The public policy underlying both types of indemnity is that protection in the form of compensation be available to innocent victims of the negligent operation of a motor vehicle. It is immaterial to the legislative purpose whether that protection is provided by liability or by uninsured motorist coverage. Today's opinion maintains this neutrality between types of indemnity, mandating only that some coverage be made available. The court's resolution of the case implements the legislative purpose of providing coverage for all without imposing either a complete prohibition on family exclusions or a preference for one type of coverage over another. *Today's pronouncement merely treats resident family members like any other injured person in the absence of a contractual provision in the policy that authorizes less favorable treatment.*

**35.** *May v. Nat'l Union Fire Ins. Co.*, 1996 OK 52, 918 P.2d 43.

breach of the law's policy.[36]

¶ 23 THE COURT OF CIVIL APPEALS' OPINION IS VACATED; THE TRIAL COURT'S JUDGMENT IS AFFIRMED

¶ 24 HARGRAVE, C.J., WATT, V.C.J., and HODGES, OPALA, and KAUGER, JJ., concur.

¶ 25 WINCHESTER, J., concurs by reason of *stare decisis*.

¶ 26 SUMMERS, J., with whom LAVENDER and BOUDREAU, JJ. join, concur in judgment.

SUMMERS, J., concurring in judgment, with whom LAVENDER and BOUDREAU, JJ., join.

¶ 1 I concur in the judgment the Court today affirms, and in its opinion insofar as it holds that the named insured exclusion contravenes the public policy embodied in our compulsory liability insurance law, and that the exclusion is therefore unenforceable to the extent that it defeats plaintiff's right to recover the minimum liability insurance protection required by statute. I must respectfully disagree, however, with the Court's announcement of new law which (1) declares that, for certain purposes, the coverages of liability and uninsured motorist insurance will be interchangeable, (2) imposes new duties of inquiry on insurance companies, and (3) creates a substantial penalty for their failure to comply with those duties. The solution to the problem of the named insured exclusion which the Court has fashioned seems to me more legislative than adjudicative, a role the courts do not generally take unto themselves.

¶ 2 The Court rejects the opportunity to simply invalidate the exclusion in light of the legislatively established public policy requiring a minimum amount of liability insurance, and instead creates this unusual resolution. We have previously adjudicated in a traditional way questions regarding the validity of certain exclusions in light of the public policy expressed in compulsory liability insurance law, and I would follow that example here.

¶ 3 In *Looney v. Farmers Insurance Group*, 1980 OK 111, 616 P.2d 1138, this Court upheld the validity of the household exclusion as well as the named insured exclusion. I agree with the majority that although *Looney* did involve facts which are quite similar to those before us today, *Looney* was not an examination of the relevant public policy considerations, and its rationale has been called into question. I agree that it should be overruled.

¶ 4 Since *Looney*, we have invalidated clauses in liability policies which were designed to get around the statutorily mandated minimum liability coverage. In *Equity Mutual Ins. Co. v. Spring Valley Wholesale Nursery, Inc.*, 1987 OK 121, 747 P.2d 947, we held a geographical exclusion limiting cover-

---

36. By failing to enact a statute governing permissible exclusions in compulsory liability insurance policies, the legislature left for judicial resolution the question of whether and to what extent the public policy underlying compulsory insurance impacts upon an insurer's contractual freedom to include exclusionary clauses in law-mandated policies. Beginning with *Looney*, this court has developed a body of case law that attempts to reconcile the use of exclusionary clauses with the evolving public policy demands of the compulsory insurance law, upholding exclusionary provisions in a few cases and rejecting them in most others. Today's pronouncement departs from that line of exposition which, on principles of contractual freedom and an embryonic conception of public policy, permitted resident family members of an insured to be left without any source of indemnity when injured in an accident caused by the insured's negligent operation of a motor vehicle. Recognizing the effect the immediate application of today's decision would have

on insurers, we have delayed the full impact of today's decision for twelve months from the date of mandate. This not only gives insurers an opportunity to adjust their practices to the new rule, but also gives the legislature ample opportunity to respond if its view of the impact of public policy differs from our own.

Our handling of this case is not without precedent. Today's departure from case law is in essence no different from the abrogation of the common law doctrine of sovereign immunity crafted in *Vanderpool v. State*, 1983 OK 82, 672 P.2d 1153. In both instances, our pronouncement constitutes a departure from prior jurisprudence. Recognizing in *Vanderpool* that our decision raised issues properly left to the legislature, we gave it prospective effect, affording the lawmaking body more than two years to consider the solution. In response to *Vanderpool*, the legislature enacted the Government Tort Claims Act, 51 O.S.1991, §§ 151–172. Like deference is accorded the legislature in the instant case.

age to travel within a 200 mile radius invalid as being in contravention of the public policy of the compulsory liability insurance law which, we found, required the minimum coverage for all claims that arise with the state. In *Young v. Mid–Continent Cas. Co.*, 1987 OK 88, 743 P.2d 1084, we struck an age exclusion which denied liability coverage if the operator was a non-named insured under age 25 who was not a relative and member of the named insured's household, finding legislative intent to require a minimum of protection to a third party.

¶ 5 Then, in *Nation v. State Farm Ins. Co.*, 1994 OK 54, 880 P.2d 877, we said in. a plurality decision that the household exclusion violated the legislative mandate of compulsory minimum liability coverage for persons in the position of the plaintiff, there the Administrator of the estate of a five-year-old child killed in an accident while riding with his father. For an analysis of the household exclusion, including cases from other jurisdictions, see *Nation, supra*, 880 P.2d at 878–882 (Summers, J., concurring).

¶ 6 I would simply hold the named insured exclusion before us today void to the extent of the statutorily required minimum liability coverage. Above this minimum the parties should be free to contract as they see fit; public policy does not require judicial intervention so long as the legislative mandate is satisfied.

¶ 7 I would leave ideas concerning the interaction of compulsory liability insurance coverage and non-compulsory UM coverage to the legislature.