2003 OK CIV APP 9

**Tonya BALDRIDGE, Plaintiff/Appellee,**

v.

**James KIRKPATRICK, Defendant,**

and

**GUIDEONE MUTUAL INSURANCE COMPANY, Garnishee/Appellant.**

No. 97,528.

Court of Civil Appeals of Oklahoma, Division No. 4.

Dec. 31, 2002.

Russell W. Wallace, Russell W. Wallace, Inc., Tulsa, for Plaintiff/Appellee.

Chris Harper, Phillip P. Owens II, Chris Harper, Inc., Edmond, for Garnishee/Appellant.

TAYLOR, Presiding J.

¶ 1 Garnishee GuideOne Mutual Insurance Company appeals the trial court's judgment in favor of Plaintiff Tonya Baldridge, garnishing the proceeds of an automobile insurance policy. Based on our review of the record and applicable law, we reverse and remand for further proceedings.

¶ 2 In 1996, Plaintiff was injured in an automobile accident. In 1998, she filed a negligence lawsuit against several persons, including defendant James Kirkpatrick. In 2000, following a jury trial, she received a judgment against him.

¶ 3 At the time of the accident, Kirkpatrick was insured under an automobile insurance policy issued by GuideOne. After obtaining the judgment against Kirkpatrick, Plaintiff filed a garnishment affidavit against GuideOne, seeking $12,564 on the judgment, plus costs and interest.

¶ 4 GuideOne filed an answer, asserting it was not liable to Plaintiff because Kirkpatrick had violated a clause in the insurance policy by failing to notify GuideOne about Plaintiff's lawsuit. This clause, which is commonly referred to as a "cooperation clause," [1] stated that GuideOne had no duty to provide coverage if Kirkpatrick failed to cooperate in the investigation, settlement, or defense of any claim or suit, or failed to "[p]romptly send us copies of any notices or legal papers

---

1. 14 *Couch on Insurance* 3d § 199:3 (1999).

received in connection with the accident or loss."

¶5 GuideOne later filed a motion for summary judgment, attaching an affidavit from Kirkpatrick's attorney to the effect that Kirkpatrick instructed the attorney not to contact GuideOne about the lawsuit. GuideOne also attached an affidavit from one of its litigation specialists stating GuideOne had no knowledge of the lawsuit until it received a letter from Plaintiff's attorney in early 2001 enclosing a copy of the journal entry of judgment.

¶6 GuideOne asserted that the undisputed facts showed Kirkpatrick's failure to notify it resulted in a violation of the insurance contract and prevented GuideOne from defending the lawsuit. Thus, argued GuideOne, the contract was voided, meaning it was entitled to judgment as a matter of law.

¶7 Plaintiff filed a response, attaching a July 1997 letter written by Baldridge's attorney to GuideOne's claims adjuster, informing GuideOne about the accident; and a September 1997 response sent by GuideOne, acknowledging receipt of the letter and stating GuideOne had investigated the matter and determined a third party was the negligent party in the claim. The response concluded, "Our file remains closed at this time."

¶8 Plaintiff asserted GuideOne had notice of her claim, even if it did not have notice of the lawsuit. Plaintiff also asserted that Oklahoma's public policy, as found in our state's compulsory automobile insurance statutes, prevented GuideOne from avoiding liability.

¶9 The trial court denied GuideOne's motion for summary judgment and granted judgment in favor of Plaintiff. GuideOne appeals.

¶10 Because the dispositive material facts are undisputed, the question presented is one of law; therefore, our standard of review of the trial court's decision is *de novo*. *Weeks v. Cessna Aircraft Co.*, 1994 OK CIV APP 171, ¶5, 895 P.2d 731, 733

(approved for publication by order of the Oklahoma Supreme Court).

¶11 The undisputed facts show GuideOne had notice of an accident involving Plaintiff and investigated the matter to the point of concluding another person was responsible. However, it is also undisputed that Kirkpatrick violated his policy with GuideOne by never informing it of the lawsuit, and that GuideOne had no notice of the lawsuit until after the lawsuit had been finally litigated.

¶12 GuideOne based its argument on *Independent School District No. 1 of Tulsa County v. Jackson*, 1980 OK 38, 608 P.2d 1153. There, the plaintiff sued an insured for damages resulting from an automobile accident. The insured failed to give the insurer notice of the litigation, as required by an insurance policy in language similar to that in the instant case. The plaintiff obtained a default judgment and then sought to garnish the insured's policy with the insurer.

¶13 The trial court held the insurer liable for the judgment rendered. The Oklahoma Supreme Court reversed, holding:

> The general rule is that a provision in an automobile liability policy requiring that the insured forward to the insurer every demand, notice, summons or other process received by the insured is unambiguous, reasonable, valid, and a condition precedent to recovery on the policy. The purpose of this policy provision is to enable the insured to inform the insurer of the lawsuit so that it may investigate the accident, and prepare a timely defense for the insured. However, unless the insurer is prejudiced from the lack of notice, failure to give the insurer notice will not relieve the insurer from liability for the accident.

*Id.* at ¶6, 608 P.2d at 1155 (citations omitted).

¶14 We agree with GuideOne that, like the insurer in *Jackson*, it was prejudiced because it had no chance to present a defense.[2] Simply applying *Jackson* to the in-

---

2. We note the reasoning of *Palmer v. Hawkeye Security Insurance Co.*, 1 S.W.3d 591 (Mo.App. 1999). Under facts similar to those in the instant case, the Missouri Court of Appeals concluded that the insurer there was not "prejudiced" because, though it learned of the judgment against its insured only after the fact, it learned within the one-year limitation period for setting aside

stant case would lead to a conclusion that the trial court erred by failing to grant GuideOne's motion for summary judgment.

¶ 15 However, in the more than 20 years since *Jackson* was decided, the Oklahoma Supreme Court has acknowledged the effect of Oklahoma's compulsory liability insurance law, which the court has stated embodies "a public policy that innocent victims of the negligent operation of motor vehicles should be compensated for their injuries." *Hartline v. Hartline*, 2001 OK 15, n. 15, 39 P.3d 765, 770. Through the legitimate exercise of the police powers of this state for the purposes of regulating motor vehicles on the public highways and providing for the safety and protection of the public, the state exercised this power by enacting the Oklahoma Financial Responsibility Act. *Harkrider v. Posey,* 2000 OK 94, ¶ 14, 24 P.3d 821, 828. Article VI of the Act, entitled "Compulsory Liability Insurance," requires owners of nonexempt motor vehicles to keep in force liability insurance or other authorized security in at least a minimum amount as a precondition to the registration of a vehicle. *Id.;* 47 O.S.2001 § 7–601(C)(1). As the *Harkrider* court stated:

> The principal purpose of the Act is to protect the public from the financial hardship which may result from the use of automobiles by financially irresponsible persons. This clearly articulated public policy of our compulsory liability insurance law plainly overrides contrary private agreements that restrict coverage whenever the contractual strictures do not square with the purpose of the Act.

*Id.* at ¶ 15, 24 P.3d at 829 (footnotes and emphasis omitted).

¶ 16 *Hartline* articulates the public policy in a similar manner, by stating that "insurance policy clauses which operate to deny coverage to the general public are void as contrary to statutorily articulated public policy." *Hartline,* 2001 OK 15, ¶ 17, 39 P.3d at 771. Furthermore, "clauses which would exclude from coverage all potential claimants have been uniformly invalidated." *Id.*

¶ 17 The *language* of the cooperation clause at issue here does not restrict coverage, but its *effect* does exactly that: it denies coverage to Plaintiff and the rest of the general public, all of whom are strangers to the insurance contract between the alleged tortfeasor and the insurer. While Plaintiff can still seek recovery from Kirkpatrick, the realities of the situation are often that an injured person's only source of meaningful compensation comes from the insurer. Indeed, that is one of the reasons the legislature enacted our compulsory insurance laws. Granting GuideOne judgment as a matter of law would frustrate public policy.

¶ 18 Furthermore, in reconciling *Jackson* with the later cases, it is worth noting that neither *Jackson* nor any of the cases on which it relies considered this public policy. In fact, one case cited by *Jackson* states: "Since the accident comes within the noncompulsory provisions of the policy the rights of an injured party are no greater than those of the insured." *Fisk v. Atlantic Nat'l Ins. Co.,* 108 N.H. 353, 236 A.2d 688, 690 (1967).

¶ 19 In the instant case, compulsory insurance is involved. In jurisdictions where an insurer's liability under compulsory coverage becomes absolute when an accident occurs, it has been stated that public policy dictates that the rights of the injured third party be protected over the rights of the insurer. 14 *Couch on Insurance* 3d § 199:141 (Observation) (1999). This position is echoed by other jurisdictions that have analyzed the rights of the insurer under its contract versus the rights of the injured third party. The general rule is stated as follows:

> With regard to a policy of automobile liability insurance voluntarily obtained, the general rule is that the breach of contractual provisions relating to acts or omissions subsequent to the accident is, in the absence of collusion between insurer and insured, available to the insurer as against the injured person, if, in the circumstances, it would have been available against the

---

default judgments. In the instant case, GuideOne learned of the judgment in time to file a motion to vacate. However, Plaintiff does not

make a similar argument, and we do not base our analysis on *Palmer.*

insured. In other words, the injured person stands in the shoes of the insured ....

. . . .

However, where the public policy, expressed by the legislature through statutes, is to protect the interests of injured third persons with respect to enforcing their claims against an automobile liability insurance carrier, the insurer is not relieved of liability where the interest of an injured third party intervenes before an insured's breach of a liability policy condition, unless the breach is material. . . .

7A Am.Jur.2d *Automobile Insurance* § 583 (1997).

¶ 20 In fact, the rule has been in force for many years, as noted in a 1953 edition of American Law Reports:

While, in the absence of express statutory provision to the contrary, failure to give notice or to forward process by the insurer, or other lack of co-operation by the insured, constitutes a good defense to an action by an injured member of the public against the insurer under a voluntary liability insurance policy . . . , *a different rule prevails* where the policy or bond was issued in compliance with a compulsory liability insurance statute . . . .

Annotation, *Failure to give notice, or other lack of co-operation by insured, as defense to action against compulsory liability insurer by injured member of the public*, 31 A.L.R.2d 645, 647, 1953 WL 8162 (1953) (emphasis added).

¶ 21 A practical reason behind the rule was expressed by the North Carolina Supreme Court in *Swain v. Nationwide Mutual Insurance Co.*, 253 N.C. 120, 116 S.E.2d 482 (1960). As in the case at bar, the insurer had knowledge of an accident but no knowledge of the lawsuit against the insured. The insurer asserted a cooperation clause applied. The trial court entered judgment for the accident victim, and the North Carolina Supreme Court affirmed. The Court noted that to bar recovery under the circumstances would practically nullify mandatory insurance statutes "by making the enforcement of the rights of the person intended to be protected dependent upon the acts of the very person who caused the injury." *Id.* at 487 (quoting *Ott v. Am. Fid. & Cas. Co.*, 161 S.C. 314, 159 S.E. 635, 637 (1931)).

¶ 22 We agree with this reasoning. A contrary result would penalize Plaintiff for the inaction of the person who allegedly caused her damages. Given this reasoning, and in light of Oklahoma's strong public policy, we conclude the trial court correctly denied GuideOne's motion for summary judgment.

¶ 23 However, we do not agree Plaintiff is entitled to judgment at this point in the proceedings. GuideOne has been held liable by a judgment in which it had absolutely no opportunity to present a defense or even to decide whether to do so. "Due process commands that interested parties be afforded notice and an opportunity to be heard before the entry of a decision affecting their rights." *Gonzalez by and through Gonzalez v. Combined Ins. Co. of Am.*, 2002 OK CIV APP 101, ¶ 19, 57 P.3d 109, 113–14. It would be fundamentally unfair to hold GuideOne responsible at this point when it received no notice or opportunity to defend until after the fact.

¶ 24 Therefore, in order to protect the rights of all the parties involved, the best result is to remand the case for further proceedings. This will give GuideOne an opportunity to offer a defense and receive its day in court, and still protect the rights of Plaintiff in accordance with Oklahoma's public policy. We note that, while Kirkpatrick's liability has been established by the prior judgment, the doctrine of collateral estoppel would not apply to GuideOne because that doctrine "cannot apply when a party did not have a full and fair opportunity to litigate an issue." *Danner v. Dillard Dep't Stores, Inc.*, 1997 OK 144, ¶ 8, 949 P.2d 680, 682 (quoting *Christopher v. Circle K Convenience Stores*, 1997 OK 27, ¶ 15, 937 P.2d 77, 79).

¶ 25 For these reasons, the decision of the trial court is REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

REIF, C.J., and STUBBLEFIELD, J., concur.